UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BOBBIE TORRY,

          Plaintiff,

v.

LISA ALBRECHT, CANDACE WHITMAN, MICHAEL MEISNER, and LYLE WEINTRAUB,

          Defendants.

Case No. 21-CV-1429-JPS

**ORDER**

      Plaintiff Bobbie Torry, an inmate confined at Fox Lake Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that the defendants violated his Eighth Amendment constitutional rights. ECF No. 1. On June 22, 2022, the Court screened Plaintiff's complaint and allowed various claims to proceed. ECF No. 12. On September 14, 2022, the Court issued an order denying Plaintiff's motion to amend the complaint, among other things. ECF No. 22. On October 17, 2022, Plaintiff filed a second motion for leave to file an amended complaint, ECF No. 31, along with a proposed amended complaint, ECF No. 31-1. On February 21, 2023, Plaintiff filed a motion to compel. ECF No. 33. On March14, 2023, Defendants filed a response to the motion to compel. ECF No. 34. Plaintiff filed a reply brief to the motion to compel on April 3, 2023. ECF No. 35.

      On April 25, 2023, the parties filed a joint notice and request for clarification. ECF No. 37. On April 26, 2023, Plaintiff filed a motion to appoint counsel.

1. **CLARIFICATION/AMENDMENT**

The Court first addresses Plaintiff's motion to amend the complaint, ECF No. 31, and the parties' join request for clarification, ECF No. 38. Federal Rule of Civil Procedure 15 allows amendment once as a matter of course in certain circumstances; Rule 15 also provides that a Court should freely grant leave to amend when justice so requires. Civil Local Rule 15 requires that a motion to amend a complaint notify the court of the proposed changes and the proposed amended complaint be filed as an attachment to the motion. Civil Local Rule 15 further requires that a motion must reproduce the entire pleading as amended and may not incorporate any prior pleading by reference.

The Court previously allowed Plaintiff to proceed on an Eighth Amendment conditions of confinement claim for contaminated drinking water against Defendants Albrecht, Whitman, and Meisner. ECF No. 12 at 12. Plaintiff seeks to amend his complaint in order to add an additional defendant, Dr. Lyle Weintraub, ("Weintraub") and additional factual allegations that Weintraub failed to treat his kidney condition. ECF No. 31.

The parties' joint request seeks to clarify Plaintiff's claims; the Court appreciates the parties' joint efforts in working together to streamline the issues in this case. *See* ECF No. 37. The parties clarify that Plaintiff does *not* intend to bring claims against Defendants Albrecht, Meisner, and Whitman related to their involvement in the remediation of the water quality at Fox Lake. *Id.* at 1. Instead, Plaintiff is pursuing claims against Defendants Albrecht, Meisner, and Whitman, regarding their involvement with his specific medical treatment for his kidneys, as it relates to any medical condition that may have been caused by the water at Fox Lake. *Id.* at 1–2. Specifically, Plaintiff is pursuing a claim against Defendant Albrecht

regarding her response to his inmate complaint filed on May 17, 2021. *Id.* at 2. Plaintiff is also pursuing a claim against Whitman and Meisner regarding requests that Plaintiff sent on October 14, 2021, asking to receive a blood test to determine whether lead from the water was causing his kidney problems. *Id.* Defendants agree to Plaintiff's statement of the scope of the lawsuit. *Id.*

The Court will grant Plaintiff's motion to amend as amendment should be freely granted when justice so requires; Defendants will not be prejudiced by this amendment. The Court will instruct the Clerk of Court to file the proposed amended complaint, ECF No. 31-1, as the amended complaint and that will be the operative complaint going forward. The Court now screens Plaintiff's amended complaint as it supersedes the previous complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998).

### 1.1 Federal Screening Standard

Under the Prison Litigation Reform Act, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the

Page 3 of 16
Case 2:21-cv-01429-JPS   Filed 06/02/23   Page 3 of 16   Document 51

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 1.2 Plaintiff's Allegations

On May 11, 2017, Plaintiff arrived at Fox Lake Correctional Institution. ECF No. 31-1 at 4. Prior to that time, he was incarcerated at Columbia Correctional Institution for the previous fifteen years. *Id.* On May 6, 2021, H.S.U. staff sent Plaintiff for fasting blood test lab work. *Id.* On May 7, 2021, Weintraub sent Plaintiff laboratory results stating that he had a slight decrease in kidney function for his "Glomerular Filtration Rate" at 73 instead of 90. *Id.* at 5.

In late May 2021, Plaintiff had an appointment with Weintraub to discuss his laboratory results. *Id.* During this meeting, Plaintiff told Weintraub that he believed there was lead in his blood from drinking the

contaminated prison water. *Id.* He told Weintraub that the contaminated water caused his kidney issue. *Id.*

On May 17, 2021, Plaintiff filed an inmate complaint regarding the contaminated water and resulting damage to his kidneys. *Id.* On June 1, 2021, Defendant Lisa Albrecht ("Albrecht"), the Assistant H.S.U. Manager, told the complaint examiner that there was no indication that the water was contributing to the decrease in his kidney function. *Id.* Plaintiff refers to a 2019 Department of Natural Resources indicating lead and copper in the drinking water and that Plaintiff's housing unit had the second highest lead level in the prison. *Id.* at 6.

Defendant Michael Meisner ("Meisner") is the Warden of Fox Lake Correctional Institution and is responsible for the operation and welfare of all the inmates in the prison. *Id.* at 7. Defendant Candace Whitman ("Whitman") is the H.S.U. Manager. *Id.* at 10. On October 14, 2021, Plaintiff sent both Meisner and Whitman requests asking to receive a blood test to determine whether lead was causing him kidney problems. *Id.* at 10, 11. Whitman responded that the prison did not do blood testing for lead. *Id.* at 10. Meisner did not respond to Plaintiff's request. *Id.*at 11. By failing to respond, Plaintiff alleges that they forced him to consume contaminated water with lead in it. *Id.* at 10, 11. In July 2021, the Department of Corrections and Meisner approved $4 million to build a new filtration system at the prison but failed to address the lead pipe problem. *Id.* at 11.

On August 23, 2021, Plaintiff's filtration rate failed again. *Id.* at 13. Weintraub stated that he did not know what was causing Plaintiff's decrease in kidney function. *Id.* Plaintiff asked Weintraub to be sent to an outside kidney specialist to treat his condition. *Id.* Weintraub never provided Plaintiff any additional treatment and refused to send Plaintiff to

a specialist. *Id.* Plaintiff alleges both emotional and physical injuries as a result of drinking the contaminated water. *Id.* at 13.

### 1.3 Analysis

The Court finds that Plaintiff states a claim against Defendants Albrecht, Whitman, Meisner, and Weintraub for an Eighth Amendment deliberate-indifference claim for their failure to treat Plaintiff's serious kidney issues. The Eighth Amendment secures an inmate's right to medical care. Prison officials violate this right when they "display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (internal quotation omitted). Deliberate indifference claims contain both an objective and a subjective component: the inmate "must first establish that his medical condition is objectively, 'sufficiently serious,'; and second, that prison officials acted with a 'sufficiently culpable state of mind,' i.e., that they both knew of and disregarded an excessive risk to inmate health." *Lewis v. McLean*, 864 F.3d 556, 562–63 (7th Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted)). "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" *Id.* (quoting *McGowan*, 612 F.3d at 640).

Plaintiff alleges that Weintraub cared for him over a period of months and was aware of Plaintiff's decrease in kidney function. Weintraub told Plaintiff he did not know what was causing Plaintiff's decrease in kidney function and provided no treatment and refused to send Plaintiff to

a kidney specialist. Plaintiff further alleges that Albrecht, Whitman, and Meisner refused to provide him with a blood test for lead after Plaintiff alerted them to his kidney issues. At the pleading stage, the Court finds Plaintiff has stated an Eighth Amendment claim against Albrecht, Whitman, Meisner, and Weintraub for their deliberate indifference to Plaintiff's kidney issues.

Given the new claim against Weintraub, the Court will order service on Weintraub below and require that all defendants file a responsive pleading to the amended complaint. Given the additional defendant, the Court will suspend the current deadlines in the case and will issue an amended scheduling order following Weintraub's appearance.

2.   **MOTION TO COMPEL**

Next, the Court addresses Plaintiff's motion to compel, ECF No. 33. Pursuant to Federal Rule of Civil Procedure 35, Plaintiff asks the Court to compel Defendant to send Plaintiff to an outside kidney specialist for a biopsy of his kidneys to test for lead levels. *Id.* Plaintiff's motion does not indicate who should pay for this testing. *Id.* Defendants' opposition, however, indicates that they do not generally object to Plaintiff receiving testing; they object only to the State of Wisconsin DOC paying for the testing. ECF No. 34. Plaintiff's reply argues that Defendants should pay for the biopsy. ECF No. 35.

The Court will deny Plaintiff's motion to compel physical testing as an improper discovery request. *See Brown v. United States*, 74 Fed. App'x 611, 614–15 (7th Cir. 2003) (Federal Rule of Civil Procedure 35 ("Physical and Mental Examinations") "does not vest the court with authority to appoint an expert to examine a party wishing an examination of himself."); *see also Turner v. Hepp et al.,* Case No. 19-cv-431-JDP ECF No. 26 (W.D. Wis.

Nov. 10, 2021) (denying prisoner plaintiff's request for blood testing at state expense); *Scott v. Richter*, No. 14-CV-864-PP, 2016 WL 589872, at *3 (E.D. Wis. Feb. 11, 2016) (Rule 35 "allows the court to order a plaintiff to submit to an examination *at the request of an opposing party*.") (emphasis in original). Defendants' counsel indicates that he is willing to work with Plaintiff to obtain testing at his own expense, and that is precisely the course of action Plaintiff should pursue in this case. Plaintiff can and should diligently pursue his claims; he may not do so, however, at unlimited state expense. The Court accordingly denies Plaintiff's motion to compel.

3. **APPOINTMENT OF COUNSEL**

As a civil litigant, Plaintiff has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). However, under 28 U.S.C. § 1915(e)(1), a "court may request an attorney to represent any person unable to afford counsel." A court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint counsel in a particular case is left to a court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

While framed in terms of a plaintiff's capacity to litigate, this discretion must also be informed by the realities of recruiting counsel in this District. When a court recruits a lawyer to represent a pro se party, the lawyer takes the case pro bono. Unlike a lawyer appointed to represent a criminal defendant during his prosecution, who is paid by the government

for his work, an attorney who takes a prisoner's civil case pro bono has no promise of compensation.

It is difficult to convince local lawyers to take such cases. Unlike other districts in this Circuit, *see, e.g.*, L.R. 83.35 (N.D. Ill.), the Eastern District of Wisconsin does not employ an involuntary appointment system for lawyers admitted to practice in the District. Instead, the District relies on the willingness of lawyers to sign up for the Pro Bono Attorney Panel and, once there, accept appointments as needed. *See* Pro Bono Program, *available at*: http://www.wied.uscourts.gov/pro-bono-program.

The District is grateful to the lawyers who participate in the Pro Bono Program, but there are never enough volunteers, and those who do volunteer rarely take more than one or two cases a year. This is understandable, as many are already busy attending to fee-paying clients. Although the Pro Bono Program does provide for payment of certain litigation expenses, it does not directly compensate a lawyer for his or her time. Participants may seek attorney's fees when permitted by statute, such as in successful § 1983 cases, but they will otherwise go unpaid. The small pool of attorneys available to this District for pro bono appointments stands in stark contrast to that of the Court of Appeals, which regularly recruits counsel from across the nation to represent pro se plaintiffs on appeal. *See, e.g.*, *James*, 889 F.3d at 323 (appointing counsel from Washington, D.C. to represent the pro se appellant); *McCaa*, 893 F.3d at 1029 (same).

Additionally, it must be remembered that, when a court determines that counsel recruitment is appropriate, it can take months to locate a willing lawyer. This delay works to the detriment of all parties and contravenes Congress's instruction in Federal Rule of Civil Procedure 1 that district courts must endeavor to secure the "just, speedy, and inexpensive

determination of every action." Fed. R. Civ. P. 1. Thus, looming large over each request for counsel are a court's ever-more-limited time and resources. With these considerations in mind, the Court returns to the question presented: whether counsel can and should be recruited to represent Plaintiff at this stage in this case. First, a court asks whether the litigant has made "reasonable" efforts to obtain his own representation. *Pruitt*, 503 F.3d at 655; *Jackson v. County of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992). It is a question not often litigated; many district court judges either overlook arguably unreasonable efforts at obtaining counsel, or they impose eminently practical requirements such as the submission of evidence demonstrating that the prisoner has tried and failed to secure representation from several lawyers. *See, e.g.*, *Kyle v. Feather*, No. 09-cv-90-bbc, 2009 WL 2474627, at *1 (W.D. Wis. Aug. 11, 2009).

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain number of rejection letters. If it was, then a Wisconsin prisoner litigating a § 1983 action could submit rejection letters from ten randomly selected criminal defense lawyers from Nevada and call his work complete. This cannot be. The purpose of the reasonable-efforts requirement is to ensure that if a court and private lawyers must expend scarce resources to provide counsel for a prisoner, he has at least made a good-faith effort to avoid those costs by getting a lawyer himself. To fulfill this duty, a pro se prisoner should reach out to lawyers whose areas of practice suggest that they might consider taking his case. If he learns that some of the lawyers he has contacted do not, he should reach out to others before he concludes that no one will help him.

Plaintiff has submitted evidence that he contacted attorneys to represent him in the matter. ECF No. 38-1. Plaintiff includes several letters to attorneys seeking legal representation and the responses he received. *Id.* The Court finds that Plaintiff's efforts satisfy the first *Pruitt* prong.

Plaintiff's request must also succeed on the second *Pruitt* question: whether the difficulty of the case exceeds his capacity to coherently present it. This assessment must be made in light of the particular capabilities and circumstances presented by each pro se litigant. *James*, 889 F.3d at 326–27. The Court of Appeals explains:

> The second step is itself grounded in a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself. The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand. Ultimately, the question is not whether a lawyer would present the case more effectively than the pro se plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant. Rather, the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself. Notably, this inquiry extends beyond the trial stage of the proceedings. The relevant concern is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty. This includes all of the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.

*Id.* (citations and quotations omitted). While a court need not address every concern raised in a motion for appointment of counsel, it must address "those that bear directly" on the individual's capacity to litigate his case. *McCaa*, 893 F.3d at 1032.

Page 11 of 16
Case 2:21-cv-01429-JPS    Filed 06/02/23    Page 11 of 16    Document 51

The balancing contemplated in the second *Pruitt* step must be done against the backdrop that district courts cannot be expected to appoint counsel in circumstances which are common to all or many prisoners. *See Bracey v. Grondin*, 712 F.3d 1012, 1017–18 (7th Cir. 2013); *Pruitt*, 503 F.3d 647, 656 (observing that the Seventh Circuit has "resisted laying down categorical rules regarding recruitment of counsel in particular types of cases"); *Harper v. Bolton*, 57 F. Supp. 3d 889, 893 (N.D. Ill. 2014). Doing so would place untenable burdens on court resources. It would also turn the discretion of § 1915(e)(2) on its head, making appointment of counsel the rule rather than the exception.

Several pronouncements from the Court of Appeals appear to be in tension with this principle. First, the Seventh Circuit notes that "complexity increases and competence decreases as a case proceeds to the advanced phases of litigation." *James*, 889 F.3d at 327. It deems the "[a]dvanced phases" to include those from discovery onward. *Id.*; *McCaa*, 893 F.3d at 1032. But nearly every prisoner case proceeds to discovery, as the district court applies exceedingly lenient review during initial screening.

Second, the Seventh Circuit instructs that district courts should evaluate a prisoner's competency irrespective of the involvement of a "jailhouse lawyer." *McCaa*, 893 F.3d at 1033; *Walker v. Price*, No. 17-1345, 2018 WL 3967298, at *5 (7th Cir. Aug. 20, 2018). How courts should do this is not clear. A court rarely knows whether a filing was prepared by the plaintiff or someone helping him. And if a court does know that the plaintiff is receiving help, how can it assess his ability to litigate without knowing which portions of the filings are his work, and which come from the jailhouse lawyer? In *Walker*, the court determined that the inmate's work product decreased in quality after his jailhouse lawyer was transferred to

another prison. 2018 WL 3967298, at *6. Yet a savvy prisoner, looking to secure counsel for himself, could do this on purpose, crafting his filings to downplay his own litigation capabilities. A court would have no way to assess whether the inmate is sandbagging it.

Finally, the Court of Appeals indicates that claims involving the state of mind of the defendant, such as those involving deliberate indifference, are particularly complex. *James*, 889 F.3d at 327–28; *McCaa*, 893 F.3d at 1032. Yet a government official's culpable mental state is the foundation for most constitutional claims. Indeed, it is often the defining characteristic that sets § 1983 claims apart from their state-law tort analogues. Deliberate indifference is essential to nearly all claims of cruel and unusual punishment, excessive force, mistreatment of medical needs, and First Amendment and due process violations. *See Kingsley v. Henderson*, 135 S. Ct. 2466, 2473 (2015); *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017); *Milton v. Slota*, 697 F. App'x 462, 464 (7th Cir. 2017) ("*[N]egligently* inflicted harm does not amount to a constitutional violation.") (emphasis in original). Taken together, these claims comprise the vast majority of prisoner litigation in this District. If state-of-mind issues are generally beyond the ability of most pro se litigants to prove, then a court likely would need to appoint counsel in nearly every prisoner case. This is plainly impossible.

The guiding rule has always been that appointment of counsel is the exception rather than the rule in pro se prisoner litigation. Yet a confluence of all-too-common circumstances—discovery, jailhouse lawyers, and claims concerning state of mind—militate in favor of the appointment of

counsel. As the list of reasons to appoint counsel grows, the reasons not to do so shrink. This District's resources have not kept pace.

Against this backdrop, the Court finds that Plaintiff has not presented sufficient evidence and argument showing that he cannot litigate or try this matter competently on his own. In his motion, Plaintiff indicates that he cannot afford legal representation, that being in prison will limit his ability to litigate, that the issues in this case are complex, that a trial will likely include conflicting testimony, and that he likely will require a medical expert. ECF No. 38.

It is true, as Plaintiff intuits, that a lawyer would be helpful in navigating the legal system; trained attorneys are of course better positioned to successfully litigate cases. But Plaintiff's lack of legal training brings him in line with practically every other prisoner or former prisoner litigating in this Court. Further, the Court assisted Plaintiff in this regard (as it does with all prisoner litigants) by providing copies of the most pertinent federal and local procedural rules along with its scheduling order. Thus, ignorance of the law or court procedure is generally not a qualifying reason for appointment of counsel. Plaintiff has not demonstrated that his case is exceptional to require counsel. As such, the Court will therefore deny Plaintiff's motion to appoint counsel. Plaintiff may renew his motion, if appropriate, at a later stage in this case.

4.  **SCHEDULING**

Finally, in light of the Court granting Plaintiff's motion to amend the complaint and adding Defendant Weintraub to the case, the Court will amend its prior scheduling deadlines. The Court acknowledges that Defendants filed a motion for summary judgment on May 30, 2023, in compliance with the Court's scheduling order. ECF No. 41. To the extent

Page 14 of 16
Case 2:21-cv-01429-JPS    Filed 06/02/23    Page 14 of 16    Document 51

that Defendants Albrecht, Meisner, or Whitman need to take additional discovery in light of this Order or to amend their motion for summary judgment, the following deadlines will apply to all parties. The Court maintains all instructions in its initial scheduling order, ECF No. 30, and amends only the following deadlines:

**Discovery:** September 1, 2023

**Summary Judgment:** October 2, 2023

**Interim Settlement Report:** September 25, 2023

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to amend the complaint, ECF No. 31, be and the same is hereby **GRANTED**; the Clerk of Court is instructed to file the proposed amended complaint, ECF No. 31-1, as the operative complaint;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the amended complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendant **Weintraub**;

**IT IS FURTHER ORDERED** that under the informal service agreement, all Defendants shall file a responsive pleading to the amended complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendant Weintraub raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** that Plaintiff's motion to compel, ECF No. 33, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel, ECF No. 38, be and the same is hereby **DENIED without prejudice**; and

**IT IS FURTHER ORDERED** that the Court amends the following scheduling deadlines: discovery to be completed on or before **September 1, 2023**; summary judgment to be filed on or before **October 2, 2023,** and an interim settlement report must be filed on **September 25, 2023**.

Dated at Milwaukee, Wisconsin, this 2nd day of June, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge