IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BOBBIE TORRY,

     Plaintiff,

v.                          Case No. 21-CV-1429

LYLE WEINTRAUB, *et al.,*

     Defendants.

## Table of Unpublished Authorities Cited in Dr. Weintraub's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies

Pursuant to E.D. Wis. Civil Local Rule 7(j)(3), Dr. Weintraub submits this table of unpublished authorities cited in his Brief in Support of Motion for Summary Judgment for Failure to Exhaust Administrative Remedies.

| | |
|---|---|
| Exhibit 1 | *Farina v. Anglin,* 418 F. App'x 539 (7th Cir. 2011). |
| Exhibit 2 | *Hoban v. Anderson,* 688 F. App'x 385 (7th Cir. 2017) |
| Exhibit 3 | *Jackson v. Matushak,* 2021 WL 3409290 (E.D. Wis. Aug. 4, 2021) |
| Exhibit 4 | *Streckenbach v. Meisner,* 768 F. App'x 565 (7th Cir. 2019) |

Dated this 8th day of September, 2023.

EXHIBIT 1

418 Fed.Appx. 539
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter See Fed.
Rule of Appellate Procedure 32.1 generally governing
citation of judicial decisions issued on or after Jan. 1, 2007.
See also Seventh Circuit Rule 32.1. (Find CTA7 Rule 32.1)
United States Court of Appeals,
Seventh Circuit.

Kerry J. FARINA, Plaintiff–Appellant,

v.

Keith ANGLIN, et al., Defendants–Appellees.

No. 09–2117.
|
Submitted April 13, 2011. [*]

---

[*] After examining the briefs and the record, we have
concluded that oral argument is unnecessary. Thus,
the appeal is submitted on the briefs and the record.
*See* FED. R.APP. P. 34(a)(2)(C).

|
Decided April 18, 2011.

**Synopsis**
**Background:** State inmate raped by another inmate brought
§ 1983 action against prison guards and administrators,
alleging that they were deliberately indifferent to his need
for protection against assailant and for medical treatment
after assault. The United States District Court for the Central
District of Illinois, Michael P. McCuskey, Chief Judge,
dismissed complaint. Inmate appealed.

**Holdings:** The Court of Appeals held that:

inmate failed to state claim for denial of medical treatment;

inmate's purported substantial compliance with prison
grievance process did not exhaust administrative remedies
with respect to inmate's failure-to-protect claim; and

inmate failed to exhaust administrative remedies for failure-
to-protect claim.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.

**\*540** Appeal from the United States District Court for
the Central District of Illinois. No. 09–2117. Michael P.
McCuskey, Chief Judge.

Before MICHAEL S. KANNE, Circuit Judge, DIANE S.
SYKES, Circuit Judge, and JOHN DANIEL TINDER,
Circuit Judge.

**\*541 ORDER**

**\*\*1** After Illinois prisoner Kerry Farina was raped
by another inmate, he sued several prison guards and
administrators under 42 U.S.C. § 1983 claiming that they
were deliberately indifferent to his need for protection from
the assailant and for medical treatment afterward. The district
court dismissed the complaint on the grounds that it fails to
state a claim for the denial of medical care and that Farina
had not exhausted his administrative remedies concerning the
assault. We affirm the judgment.

According to the allegations in the operative complaint, which
at this stage we must presume are true, *see Smith v. Peters,* 631
F.3d 418, 419 (7th Cir.2011), fellow inmates at the Danville
Correctional Center repeatedly threatened to sexually assault
Farina when he arrived there in May 2008. Farina requested to
be placed in protective custody, but instead he was transferred
in July to a different section in the prison's general population.
After the move Farina told a guard about the prior sexual
harassment. That same day James O'Neal, an inmate, warned
Farina that he and his friends would beat and sexually assault
Farina unless Farina paid them.

After O'Neal repeated the threat the next day, Farina pushed
the panic button in his cell, but the guard who answered
simply told him to stop pushing the button. The following
day, July 6, 2008, O'Neal once more threatened Farina, who
pushed the panic button but this time got no response at all.
Hours later O'Neal raped Farina in the shower and threatened
to kill him and his family if he reported the assault. Once
back in his cell Farina tried the panic button a third time
and was told to cease by the guard who responded. O'Neal
witnessed this exchange and repeated his threat to kill Farina
if he reported the assault.

The next day, on July 7, O'Neal followed Farina to his cell,
punched him in the head, and stole the food Farina had bought

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works.

1

from the prison commissary. The sight of O'Neal with Farina's food caught the attention of a guard, and the guard brought Farina to see Lieutenant Myers, who said that he had heard that Farina was gambling with his food. Farina explained that O'Neal had raped him, that he feared for his life, and that he wanted to see a doctor. Myers told Farina to fill out a written request for medical treatment and placed him in segregation while investigating the gambling accusation. Before the day ended a nurse went to segregation and checked on Farina. Two days after that Farina met with Keith Anglin, then an assistant warden, and again reported the rape and asked to see a doctor. Anglin moved him to the receiving section, and another nurse visited Farina that afternoon. He was returned to the general population the next day, and during the following week, he met twice with a social worker and a psychologist.

On July 28, 2008, three weeks after he first reported the rape to Lieutenant Myers, Farina filed a prison grievance seeking treatment for tearing and bleeding caused by the rape, as well as an HIV test and psychiatric treatment. He never received an answer from administrators, and in August 2008 he was transferred to the Vandalia Correctional Center. On March 19, 2009, Farina filed another grievance, again seeking a blood test, but also contending that prison officials had failed to protect him from the rape. This grievance was returned as untimely to Farina, who appealed that decision to the Administrative Review Board a week later. In that appeal Farina maintained that he had good cause for not filing within the prescribed deadline: he had been "raped, intimidated, extorted, and then transferred." The **\*542** Board was unpersuaded and rejected Farina's appeal with the terse explanation that the grievance was untimely and already had been addressed.

**\*\*2** Farina then filed this lawsuit. At screening, *see* 28 U.S.C. § 1915A, the district court initially allowed him to proceed with his claims that the defendants had failed to protect him and then denied him medical care. But after the defendants had been served and answered Farina's complaint, the court reviewed the matter again, *see id.* § 1915(e)(2)(B)(ii); *Lindell v. McCallum,* 352 F.3d 1107,1109 (7th Cir.2003), and this time dismissed it. The court reasoned that Farina had pleaded himself out of court on his medical claim by attaching records from Danville showing that a nurse had seen him the same day he reported the rape and that a psychologist began treating him a week later. And Farina had failed to exhaust his administrative remedies for the assault claim, the court continued, because he did not file a grievance on that issue within 60 days of the incident.

Farina argues on appeal that the district court should not have inferred from the Danville medical records that he received treatment. He insists that the court was required to accept as true his allegation that he did not receive any treatment and attaches a letter from his current prison stating that his medical file contains no record of treatment between July and August 2008. That correspondence, whatever its significance, cannot undermine the documents that Farina incorporated into his complaint by attaching them. *See Buchanan–Moore v. Cnty. of Milwaukee,* 570 F.3d 824, 827 (7th Cir.2009); *Tierney v. Vahle,* 304 F.3d 734, 738–39 (7th Cir.2002); *Thompson v. Ill. Dep't of Prof'l Regulation,* 300 F.3d 750, 754 (7th Cir.2002). Those records are progress notes showing that a nurse met with Farina the day he reported the rape to Lieutenant Myers and that another nurse saw him two days later after he told Assistant Warden Anglin that he wanted medical treatment. None of the defendants are medical personnel, and what these records conclusively establish is that defendants Myers and Anglin must have acted promptly on Farina's requests for medical care and certainly did not delay, or prevent him from receiving, treatment. *See Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 829 (7th Cir.2009); *Hayes v. Snyder,* 546 F.3d 516, 527–28 (7th Cir.2008); *Greeno v. Daley,* 414 F.3d 645, 655–56 (7th Cir.2005); *Langston v. Peters,* 100 F.3d 1235,1240–41 (7th Cir.1996). If Farina means to imply that he received inadequate care during the nurses' visits or afterward, then the fault lies with the medical personnel who cared for him, not with the prison guards and administrators he sued.

We thus conclude that the district court properly dismissed this claim, though with one caveat: In his grievances Farina sought testing for HIV, which in Illinois must be provided to the victim of a prison sexual assault. *See* Ill. Dep't of Corrections Admin. Directive 04.01.301(6)(c). It is unclear whether Farina since has been tested, but if not, our decision here should not be read to foreclose him from seeking relief to prevent an unreasonable risk of serious harm to his future health. *See Helling v. McKinney,* 509 U.S. 25, 33–34, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993); *Barnes v. Briley,* 420 F.3d 673, 675–76, 678 (7th Cir.2005).

**\*\*3** We now turn to Farina's claim about the rape. The district court dismissed this claim on the basis of 42 U.S.C. § 1997e(a), which requires inmates to exhaust their administrative remedies before filing suit in federal court. Farina maintains that he substantially complied with the administrative process when he filed **\*543** his July 2008 grievance seeking medical treatment. When prison authorities

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works.

ignored that particular grievance, he reasons, all remedies became unavailable. But that understanding is unsound. It is true that administrative remedies are "unavailable," and thus exhausted, if the underlying grievance went unanswered. *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir.2006); *Brengettcy v. Horton,* 423 F.3d 674, 682 (7th Cir.2005); *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir.2002). Farina, then, may have exhausted his administrative remedies concerning his medical claim. But that outcome did not extend to every objection he had about the conditions of his confinement. Farina still was required to file a timely grievance about the defendants' failure to protect him from the rape. *See Dixon v. Page,* 291 F.3d 485, 489–90 (7th Cir.2002). Substantial compliance with administrative requirements does not, as he suggests, constitute exhaustion. *Booth v. Churner,* 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); *Dole,* 438 F.3d at 809.

We note, however, that the district court may have acted too quickly in dismissing Farina's claim for failure to exhaust. On the same day that the defendants filed their brief in this appeal, we issued our opinion in *Hurst v. Hantke,* 634 F.3d 409 (7th Cir.2011), a case in which the aggrieved inmate, like Farina, had asserted to the Administrative Review Board that he had good cause for filing his grievance outside the 60–day deadline. *See* ILL. ADMIN. CODE tit. 20, § 504.810. The district court concluded that the inmate had failed to exhaust his administrative remedies because he did not present evidence of his good cause to the Board. But no regulation required him to submit evidence, and neither did the Board invite him to do so before it rejected the

inmate's claim of good cause. *Hurst,* 634 F.3d at 410–11. And since the inmate "could not possibly" have complied with an undisclosed requirement, we explained, the administrative remedy was "unavailable." *Id.* at 412. Still, we affirmed the judgment because the inmate had failed to provide evidence of good cause to the district court at summary judgment.

Here the district court dismissed Farina's complaint without exploring whether, for purposes of § 1997e(a), the administrative remedy was made "unavailable" by the Board's failure to address Farina's assertion that he had good cause for filing late. But the oversight did not prejudice Farina, since the absence of good cause is apparent from his complaint. Farina cited to the Board as good cause for his late filing the threats and extortion that occurred at Danville. But both of Farina's claims arise from the same events, and although he clearly suffered intimidation at the hands of O'Neal, Farina nevertheless filed a grievance in July 2008 while at Danville, the location of the assault. That grievance, which Farina attached to his federal complaint, demonstrates that the administrative process was both available to him and actually used. Thus, we agree with the district court that Farina failed to exhaust the administrative remedies for his failure-to-protect claim.

**\*\*4** Accordingly, the judgment is AFFIRMED.

## All Citations

418 Fed.Appx. 539, 2011 WL 1460175

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 2

688 Fed.Appx. 385
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or after
Jan. 1, 2007. See also U.S.Ct. of App. 7th Cir. Rule 32.1.
United States Court of Appeals, Seventh Circuit.

Joseph HOBAN, Plaintiff-Appellant,
v.
Terri ANDERSON, et al., Defendants-Appellees.

No. 16-1246
|
Submitted May 4, 2017 [*]
|
Decided May 5, 2017
|
Rehearing and Rehearing En
Banc Denied August 7, 2017 [**]

[*] We have agreed to decide the case without oral
argument because the briefs and record adequately
present the facts and legal arguments, and oral
argument would not significantly aid the court.
FED. R. APP. P. 34(a)(2)(C).

[**] Judge Joel M. Flaum took no part in the
consideration of the petition for rehearing and
rehearing en banc.

**Synopsis**
**Background:** State inmate brought § 1983 action against
prison officials, asserting claims for unlawful conditions of
confinement, deliberate indifference to his medical needs,
and failure to protect. The United States District Court for
the Central District of Illinois, No. 12-CV-1038, James E.
Shadid, Chief Judge, granted summary judgment in favor of
defendants. Inmate appealed.

**Holdings:** The Court of Appeals held that:

Eighth Amendment claims accrued on date inmate exhausted
grievance;

inmate was not entitled to equitable tolling of two-year
limitations period for Eighth Amendment claims;

inmate failed to establish that chairperson of prison
administrative review board had actual knowledge of
impending harm to inmate; and

inmate failed to exhaust administrative remedies with respect
to claims against prison warden.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion for Summary
Judgment.

**\*386** Appeal from the United States District Court for the
Central District of Illinois. No. 12-CV-1038, James E. Shadid,
*Chief Judge.*

**Attorneys and Law Firms**

David Michael Shapiro, Attorney, Macarthur Justice Center,
Chicago, IL, for Plaintiff-Appellant

Joseph Hoban, Pro Se

Mary Ellen Welsh, Attorney, Office of the Attorney General,
Civil Appeals Division, Chicago, IL, for Defendants-
Appellees

Before MICHAEL S. KANNE, Circuit Judge, DIANE S.
SYKES, Circuit Judge, DAVID F. HAMILTON, Circuit
Judge

**ORDER**

Joseph Hoban, an Illinois prisoner, sued prison officials under
42 U.S.C. § 1983 on three claims: first, they subjected
him to unlawful conditions of confinement while he was
in segregation; second, they ignored his medical needs,
also when he was in segregation; and third, they failed to
protect him from a serious threat to his safety after he left
segregation. The district court granted summary judgment to
the defendants. It ruled that some claims were time-barred,
others were administratively unexhausted, and on another
claim, he presented insufficient evidence from which a jury
reasonably could find liability. We affirm the judgment in all
respects.

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works. 1

Before Hoban arrived at Pontiac Correctional Center in September 2010, he had been injured and threatened by members of the Latin Kings gang at other prisons. At Pontiac he briefly received protective custody. About nine months after he arrived there, though, Hoban was found guilty of assaulting another inmate named Echols, who Hoban believed was a member of the Latin Kings. Hoban was punished with disciplinary segregation for six months, which took him out of protective custody.

During his first twelve days in segregation, Hoban experienced problems. He reports that his cell had feces and blood on the walls and mattress, was "stiflingly" hot, and had no running water, necessitating that he drink water from the toilet. As a result of these conditions, he says, he "broke out with some rashes" and experienced nausea, vomiting, and dehydration. Hoban suffers from bipolar disorder and depression; although he received medications for these conditions, he did not receive several of his other medications—antacids, painkillers, and medicated shampoo.

Hoban responded with his first of two grievances in this case. In this grievance he complained about his conditions of confinement, his inability to receive his medicines, and his conviction for assaulting Echols. After twelve days in this cell, Hoban was transferred to a different segregation cell, where, he said, "[e]verything worked and it was very clean." About **\*387** three weeks later**,** Pontiac's warden, Randy Pfister, denied the grievance. Hoban appealed, but the Administrative Review Board rejected the appeal. (With this decision on September 13, 2011, Hoban exhausted his conditions-of-confinement and medical-indifference claims.)

While Hoban was still in segregation, he filed a second grievance. In it he sought to return to protective custody upon his release from segregation. The request was supported by his counselor, but the prison lieutenant who reviewed the grievance, Edward Vilt, recommended to Pfister that it be denied. Vilt reasoned that Hoban's "paranoia" created "a security concern for the other inmates housed in the [protective custody unit]" and his fight with Echols was "not indicative of an inmate in need of protection." Pfister accepted the recommendation and denied Hoban protective custody. Hoban appealed this decision to the Administrative Review Board.

Hoban did not wait for the review process for his second grievance to conclude before filing his original complaint in this suit, which principally raised failure-to-protect claims.

He alleged that, by denying him protective custody, Pfister and other named prison administrators were deliberately indifferent to his safety. The district court screened the complaint under 28 U.S.C. § 1915A(b)(1) and dismissed it. Hoban appealed, and we vacated the judgment because he had pleaded plausible claims, overlooked by the district court, against unnamed correctional officers. *See Hoban v. Godinez,* 502 Fed.Appx. 574, 576-78 (7th Cir. 2012). We also ruled that, since he alleged that Latin King members attacked him after he gave a named defendant (Terri Anderson) a list of their names, his claim against her could go forward. *See id.* at 577-78.

Hoban meanwhile finished pursuing at the prison the exhaustion of his second grievance, which had raised his failure-to-protect assertions. At his hearing before the Administrative Review Board, he gave the Board's chairperson, Sherry Benton, a list of names of Latin King inmates who, he said, "tried to murder" him and photos of his "bloody" body after he had been attacked by Latin King members at Cook County Jail. Benton nonetheless recommended to Anderson that she uphold the denial of Hoban's grievance requesting protective custody. As Benton explained, Hoban had no declared enemies on file; no other prisoners had declared him an enemy; Pfister had not found "sufficient verifiable information to warrant Protective Custody placement"; and Hoban was found guilty of attacking Echols, a Latin Kings member. Anderson accepted the recommendation and repeated these reasons for denying Hoban protective custody on February 8, 2012.

After his second grievance was denied, Hoban returned to the general population. He shared a cell with Michael Pinon, a Hells Angel member and self-proclaimed hit man for the Latin Kings. Before Pinon became Hoban's cellmate, Hoban warned the gallery officer not to put them in the same cell, but she disregarded the warning. According to Hoban, during the first night in their cell, Pinon "lunged" at him, starting a fight that resulted in "[s]ome scratches" to Hoban, but "nothing serious." The next morning Hoban reported the fight to a prison guard and was moved to a different cell.

Hoban amended his complaint on December 11, 2013. He restated failure-to-protect claims against Anderson and Pfister and added a failure-to-protect claim against Vilt. Vilt, recall, had recommended, before Hoban filed his original complaint, against putting him in protective custody. Hoban also sued Vilt for exhibiting deliberate indifference to his medical needs **\*388** while he was in disciplinary

segregation. In addition Hoban brought a failure-to protect claim against Benton, who had recommended against protective custody after Hoban filed his original complaint. Finally Hoban added new claims against Pfister and Vilt, who, Hoban said, rebuffed his complaints about the disciplinary segregation cell's "inhumane conditions."

The district court granted the summary judgment motion in favor of all defendants. Regarding the conditions-of-confinement and medical-indifference claims from the amended complaint, the court ruled them untimely under the applicable two-year statute of limitations. The court also ruled that Hoban did not exhaust his administrative remedies on his failure-to-protect claims against the defendants, other than Benton, because he had filed his original complaint against them before the Administrative Review Board had completed its grievance proceedings. And the court ruled that Hoban did not establish a triable question on the merits against Benton.

On appeal Hoban first raises two arguments about the timeliness of the conditions-of-confinement and medical-indifference claims that he maintains on appeal. These claims first appeared in his complaint filed on December 11, 2013. According to him, the accrual date for these claims should have been in February 2012 (when his second grievance was exhausted). He is wrong. The district court correctly used September 13, 2011, the date that he exhausted his first grievance. That is the grievance that raises his complaints about the conditions of his cell in segregation and his inability to receive some of his medicines. The exhaustion of those claims ended the tolling of the statute of limitations that occurred during the administrative grievance process and triggered the two-year time limit to sue. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). By contrast his second grievance focused on his request for protective custody. Because Hoban filed these newly stated claims on December 11, 2013, and the filing deadline for these claims was September 13, 2013, the district court correctly found the claims time-barred.

Second, Hoban contends that the district court erred by not granting him equitable tolling for his conditions-of-confinement and medical-indifference claims. He asserts that his recruited lawyer "abandon[ed]" him for about eight months after these claims accrued. But his attorney's alleged neglect does not warrant tolling the statute of limitations because complying with the filing deadline was not attributable to an "extraordinary circumstance" outside of Hoban's "control." *Menominee Indian Tribe of Wis. v.*

*United States*, ––– U.S. ––––, 136 S.Ct. 750, 756, 193 L.Ed.2d 652 (2016). Tolling the statute of limitations based on his attorney's alleged negligence would render the limitation meaningless. *See Williams v. Sims*, 390 F.3d 958, 963 (7th Cir. 2004).

Hoban next challenges the grant of summary judgment to Benton on his claim that she was deliberately indifferent to the threat from Latin King members. He points to his affidavit stating that he gave her a list of Latin King inmates who "tried to murder" him and showed her pictures of his "bloody" body after attacks by the gang at Cook County Jail. Based on this evidence, he asserts that a jury reasonably could find that Benton knew that he faced a substantial risk of serious harm. He is incorrect because he declared in his affidavit that the Latin King inmates on his list were not at Pontiac Correctional Center (where he is incarcerated); they are all housed at Stateville and Menard Correctional Centers. Hoban's list of hostile inmates at other prisons is too vague of a threat to his safety at Pontiac for a reasonable **\*389** factfinder to conclude that Benton had "actual knowledge of impending harm" to him. *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (internal quotation marks omitted). *See also Davis v. Scott*, 94 F.3d 444, 446–47 (8th Cir. 1996) (jury could not reasonably conclude that prison officials exhibited deliberate indifference by returning prisoner to "the general population" when "the inmates on [his] enemies list were no longer incarcerated" at the prison).

Hoban finally argues that he exhausted his administrative remedies for his failure-to-protect claims against other defendants, relying on *Barnes v. Briley*, 420 F.3d 673 (7th Cir. 2005). He understands *Barnes* to say that, even if a prisoner does not exhaust claims in his original complaint, the court may properly consider them in an amended complaint as long as the amended complaint contains an exhausted claim.

The district court correctly concluded that 42 U.S.C. § 1997e(a) barred Hoban's failure-to-protect claims against Anderson and Pfister because those claims were not administratively exhausted when he first brought them in his original complaint. Hoban misreads *Barnes*, which held only that when filing an amended complaint, a prisoner may bring a claim newly *discovered* after filing the original complaint and administratively exhausted by the time of the amended complaint's filing. *See Barnes*, 420 F.3d at 678. All of the facts regarding Hoban's claim that Pfister failed to provide him with protective custody were known to him when he filed his original complaint. Moreover Hoban

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works.

did not exhaust his claims against Pfister and Anderson before filing his original complaint. Because he is "time-barred by the prison's grievance policy from further pursuing administrative remedies for these events, he could do nothing to cure the failure to exhaust." *Hill v. Snyder*, 817 F.3d 1037, 1040 (7th Cir. 2016).

That brings us to the problem that the district court granted summary judgment to Vilt on exhaustion grounds for the failure-to-protect claim even though he did not ask for that relief. Ordinarily, before a district court enters summary judgment against a plaintiff, the plaintiff is entitled to a chance to present his evidence and arguments for why a trial is needed. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015). But the fatal flaw in Hoban's failure-to-protect claim against Vilt

is the same as applies to the failure-to-protect claim against Pfister: Hoban knew of these claims when he first sued for not receiving protective custody, but he had not yet exhausted his administrative remedies. Hoban gives us no reason on appeal to believe that he did not know of his failure-to-protect claim against Vilt before filing his original complaint or that the exhaustion analysis for Vilt is any different from the unexhausted claim against Pfister. Therefore the district court did not commit reversible error in granting summary judgment for Vilt.

AFFIRMED.

**All Citations**

688 Fed.Appx. 385

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT 3

2021 WL 3409290
Only the Westlaw citation is currently available.
United States District Court, E.D. Wisconsin.

Littleton Emmett JACKSON, Plaintiff,

v.

Rachel MATUSHAK, et al., Defendants.

Case No. 20-C-1341
|
Signed 08/04/2021

**Attorneys and Law Firms**

Littleton Emmett Jackson, Green Bay, WI, Pro Se.

Wisconsin Dept of Justice, Kevin L. Grzebielski, Wisconsin Department of Justice Office of the Attorney General, Madison, WI, for Defendants.

**DECISION AND ORDER**

LYNN ADELMAN, United States District Judge

**\*1** Plaintiff Littleton Emmett Jackson, a Wisconsin state prisoner representing himself, filed this lawsuit under 42 U.S.C. § 1983. I screened the plaintiff's fourth amended complaint and permitted him to proceed on Eighth Amendment claims against defendants Rachel Matushak, Nurse Staeven, Cassandra Baier, Jennifer Brauer, and Hannah Utter (collectively the State Defendants). ECF No. 18. I also allowed him to proceed on Eighth and First Amendment claims against defendant Susan Peters. *Id.* The State Defendants and Peters separately move for partial summary judgment on the ground that the plaintiff failed to exhaust his available administrative remedies for some of his claims against them. ECF No. 38 & 42. As explained below, I will **GRANT** the defendants' motions.

**I. BACKGROUND** [1]

[1] Facts in this section are taken from the parties' proposed findings of fact, declarations in support, and responses to the opposing parties' proposed facts. ECF Nos. 40–41, 44, 49–50, 52–54, 57 & 59. For purposes of this decision, I will consider admitted any properly supported facts that the

opposing party does not contest. *See* Civil L. R. 56(b)(4). I will consider proposed facts only to the extent they are supported by evidence in the record, *see* Fed. R. Civ. P. 56(c)(1), and will consider arguments in the supporting memoranda only to the extent they properly refer to supported facts, *see* Civil L. R. 56(b)(6).

I allowed the plaintiff to proceed on Eighth Amendment claims that in June or July 2020, Matushak, Baier, and Staeven were aware of his severe pain and failed to treat it; that in July 2020, Utter knew about the plaintiff's pain but delayed scheduling him for a doctor's appointment; and that in September 2020, Brauer failed to provide him medication for his pain or schedule him for treatment. ECF No. 18 at 4–6. I also allowed him to proceed on an Eighth Amendment claim that in August 2020, Peters knowingly prescribed him an inefficacious course of treatment and a First Amendment claim that Peters discontinued his medication because he complained against her. *Id.* at 6.

The State Defendants contend that the plaintiff did not exhaust his administrative remedies for his Eighth Amendment claims against Utter or Brauer. ECF No. 39. Peters contends that the plaintiff did not exhaust his administrative remedies for the First Amendment claim against her. ECF No. 43.

**A. The State Defendants**

The plaintiff is an inmate at Green Bay Correctional Institution (GBCI), where the State Defendants worked at the time of the events alleged in this lawsuit. ECF No. 40, ¶¶ 1–2. The plaintiff filed several inmate complaints around the time of the events alleged in his lawsuit. On July 29, 2020, the plaintiff complained that a correctional officer did not give him noon medication on July 19, 2020, in violation of a rule in the inmate handbook. *Id.*, ¶¶ 3–4; ECF No. 41-2 at 11–12. On August 4, 2020, the plaintiff complained that a corrections officer did not give him pain medication on August 2, 2020. ECF No. 40, ¶¶ 5–6; ECF No. 41-3 at 11. On August 11, 2020, he complained that Nurse Staeven knew the plaintiff was experiencing severe pain but forced him to wait over seven days to see his advanced care provider. ECF No. 40, ¶¶ 9–10; ECF No. 41-5 at 11. On August 12, he complained that his pain medication was delayed for four days (from August 6 to 10, 2020) after he told medical staff that he was in pain. ECF No. 40, ¶¶ 7–8; ECF No. 41-4 at 10.

**\*2** The State Defendants contend that among these inmate complaints, the plaintiff did not file a complaint about Utter,

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works. 1

who is the Health Services Unit (HSU) Manager, failing to tell the HSU to schedule a doctor's appointment for the plaintiff to address his pain. ECF No. 40, ¶ 11; ECF No. 41, ¶ 42. They also contend that he did not file a complaint about Brauer failing to provide the plaintiff his pain medication or schedule him for treatment when he wrote to the HSU about his pain on September 21. ECF No. 40, ¶ 12; ECF No. 41, ¶ 43.

The plaintiff disputes the State Defendants' statements that he failed to file an inmate complaint against Utter or Brauer. ECF No. 49, ¶¶ 11–12. He contends that inmate complaint number GBCI-2020-10936, in which he complained about inadequate pain pills, exhausted his administrative remedies against "any nurse or medical staff ... HSU manager Utter included." *Id.*, ¶ 11; ECF No. 54-1 at 7. The plaintiff submitted complaint GBCI-2020-10936 on June 24, 2020. ECF No. 54-1 at 7. He complained that "this prison will not, will not [sic] let me have my KOP [keep on person] medication in my cell." *Id.* He claimed that he needed to keep the pain pills in his cell "due to severe, severe pain." *Id.* The complaint says the plaintiff "should not be forced to eat pain pills just in case of severe pain especially when I[']m not sure of the amount of pain medication to take because I can't guess the amount of pain that I might have." *Id.* at 7–8. The plaintiff complained that he suffers pain all hours of the night and should not be forced to wait until the next medication pass. *Id.* at 8.

The plaintiff did not attach any documents from the inmate complaint examiner office's review of this complaint. His appeal from the inmate complaint examiner's decision says the complaint examiner summarized his facts as follows:

> Inmate Jackson complains that he can't keep his KOP medication in his RHU cell. HSM Utter stated that per security, KOP medications are not allowed in the RHU cells. All meds are staff controlled. The inmate will have the opportunity to take his meds at the med pass times.

*Id.* at 9. The plaintiff's appeal reiterates that he experiences pain all through the night and says he previously could keep medication in his cell when at a different prison. *Id.* at 9–10. He swears in his declaration in opposition to the State Defendants' motion for summary judgment that it was the prison's refusal to allow him to keep medication in his cell

that led him to request stronger medication instead. ECF No. 54, ¶ 2.

**B. Defendant Peters**

Peters is an advanced practice nurse practitioner who worked at GBCI at the time of the alleged events. ECF No. 44, ¶ 2. She saw the plaintiff on August 12, 2020, for his complaints of head pain. *Id.* During the visit, the plaintiff complained that his current medications (naproxen and acetaminophen) did not alleviate his headaches and requested that Peters prescribe stronger medication. *Id.*, ¶¶ 3–4. He also told Peters he was concerned about long-term side effects from taking the medication. *Id.*, ¶ 5. Peters ordered labs to determine what medication to give the plaintiff. *Id.*, ¶ 6.

On August 15, 2020, the plaintiff filed an inmate complaint asserting that a doctor (Peters) refused to give him safer and stronger pain medication during his August 12, 2020 appointment. *Id.*, ¶ 7; ECF No. 41-6 at 11–12. An inmate complaint examiner recommended the complaint be dismissed, and a reviewing authority dismissed the complaint on August 27, 2020. ECF No. 44, ¶¶ 8–9. The plaintiff appealed the dismissal, and his appeal was dismissed on September 9, 2020. *Id.*, ¶ 10; ECF No. 41-6 at 7.

**\*3** Peters asserts that the plaintiff did not file an inmate complaint alleging that she discontinued his medication or took away his option to continue receiving acetaminophen in retaliation for the plaintiff's August 15, 2020 inmate complaint against her. ECF No. 44, ¶ 11; ECF No. 41, ¶ 44. The plaintiff disputes that statement. ECF No. 52, ¶ 11. He asserts that he wrote "[o]n a[n] inmate complaint appeal ... I feel like the gbci staff are all working in collusion." *Id.* (citing ECF No. 41-7 at 12). He also says that on August 12, 2020, he "wrote a retaliat[i]on complaint against the entire medical staff" for delaying his pain medication. *Id.* (citing ECF No. 41-4 at 10). He contends that because Peters was part of the medical staff at GBCI on August 12, 2020, his complaint about retaliation exhausted his administrative remedies for his claim against her. *Id.*

**II. ANALYSIS**

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works.

"Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Thus, to survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## A. Exhaustion

Under the Prison Litigation Reform Act, an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Exhaustion requires that an inmate comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Court of Appeals for the Seventh Circuit applies a "strict compliance approach to exhaustion," *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), and expects inmates to adhere to "the specific procedures and deadlines established by the prison's policy," *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015) (citing *Woodford*, 548 U.S. at 93). That means if the plaintiff failed to complete any step in the prison's exhaustion process before bringing his lawsuit, the court must dismiss the plaintiff's claims. *See Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999). "Substantial compliance with administrative remedies" does not satisfy exhaustion requirements. *Farina v. Anglin*, 418 F.App'x 539, 543 (7th Cir. 2011) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001), and *Dole*, 438 F.3d at 809). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. *See Pavey v. Conley*, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007) ).

Wisconsin has an established system that allows inmates to file complaints about policies, rules, living conditions, and staff actions at their institutions. Wis. Admin. Code § DOC 310.06. Inmates must exhaust all administrative remedies that the Department of Corrections has promulgated by rule before commencing a civil action against an officer, employee, or agent of the DOC. *Id.*, § DOC 310.05. An inmate must file

a complaint within fourteen calendar days of the incident. *See id.*, § DOC 310.07(2). Each complaint "may contain only one clearly identified issue" and "must contain sufficient information for the department to investigate and decide the complaint." *Id.*, § DOC 310.07(5)–(6). The inmate must appeal any adverse decision within fourteen days and await a final decision from the Office of the Secretary. *Id.*, §§ DOC 310.12 & 310.13.

## B. State Defendants

**\*4** The State Defendants concede that the plaintiff exhausted his administrative remedies for his claim that in June or July 2020, Matushak, Baier, and Staeven denied his requests for stronger pain medication and delayed scheduling him for a doctor's appointment. They assert that he failed to exhaust his administrative remedies for his claim that Utter delayed scheduling him a doctor's appointment on July 22, 2020, and that Brauer refused to provide him medication on September 21, 2020.

It is undisputed that none of the inmate complaints the plaintiff submitted from July 22 to August 5, 2020, or from September 21 to October 5, 2020—within the 14-day deadlines to file a complaint about Utter and Brauer's actions—related to his claims against Utter and Brauer. The plaintiff instead asserts that he exhausted his claims against Utter and Brauer based on an inmate complaint he filed on June 24, 2020, complaining that he was not allowed to keep medication on his person while in the restricted housing unit. But that complaint could not have exhausted his administrative remedies for the claims against Utter and Brauer because the events alleged in those claims did not occur until July and September 2020—one to three months *after* he filed his June 24, 2020 inmate complaint. Moreover, the June 24, 2020 complaint is about not being allowed to keep medication in his cell; it does not involve HSU staff delaying a doctor's appointment or refusing to provide him medication. The plaintiff does not dispute that he did not file any other inmate complaints about Utter or Brauer's alleged actions.

The plaintiff alternatively contends that his "ENTIRE complaint shows that Nurse Brauer and HSU manager Utter are also guilty of claim #1 which means that Jackson also exhausted his administrative remedies on Nurse Brauer and HSU manager Utter also." ECF No. 50, ¶ 3. But I did not allow the plaintiff to proceed against Utter or Brauer on the same claim that I allowed him to proceed on against the other State Defendants. In fact, I specifically noted that, "The plaintiff

does not allege that HSU Manager Utter provided inadequate medical treatment, refused to alter his medication, or could have ordered a stronger prescription." ECF No. 18 at 5. I allowed him to proceed only on a claim that "Utter could have directed the HSU to schedule for the plaintiff for a doctor's appointment but declined to do so despite knowing about the plaintiff's pain." *Id.* Against Brauer, I allowed him to proceed only on a claim that she did not provide him medication or schedule him for a doctor's appointment in response to a September 21, 2020 health services request about his pain. *Id.* at 6. These claims are distinct from the claim that Matushak, Baier, and Staeven disregarded his pain in June or July 2020. *Id.* at 4. The plaintiff may not proceed against Utter or Brauer merely because he exhausted his *other* claim against different defendants. He must exhaust his administrative remedies for *each claim* in this lawsuit. *See Henry v. Deshler*, No. 20-2185, 2021 WL 2838400, at *2 (7th Cir. July 8, 2021) (citing *Schillinger v. Kiley*, 954 F.3d 990, 996 (7th Cir. 2020)).

To the extent the plaintiff suggests that his health services requests exhausted his administrative remedies, he is incorrect. Inmates submit a health services request form to alert medical staff at their institution of a medical need. That form "does not constitute a formal grievance for exhaustion purposes." *Dionne v. Majewski*, No. 15-C-190, 2016 WL 1050283, at *2 (E.D. Wis. Mar. 16, 2016) (citing *Whiteside v. Pollard*, No. 10-C-725, 2012 WL 1580430, at *1 (E.D. Wis. May 4, 2012) ("[R]equests made through health services do not constitute proper exhaustion under Wisconsin's administrative rules.") ).

 **\*5** The State Defendants have met their burden to show that the plaintiff failed to exhaust his administrative remedies for his claims against Utter and Brauer. I must dismiss those claims without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (explaining that "all dismissals under § 1997e(a) should be without prejudice").

### C. Peters

Peters concedes that the plaintiff exhausted his administrative remedies for his Eighth Amendment claim against her related to his August 12, 2020 appointment. She contends that the plaintiff did not exhaust his administrative remedies for his claim that Peters retaliated against him after he filed his August 15, 2020 complaint about the August 12, 2020 visit because he did not file an inmate complaint about that claim.

The plaintiff insists he exhausted his administrative remedies for his retaliation claim against Peters for two reasons. First,

he asserts that he filed a retaliation claim against the entire GBCI medical staff on August 12, 2020. Because Peters was part of the medical staff that day, his argument goes, that complaint exhausted his administrative remedies for his claim against her. But the claim on which I allowed him to proceed is that Peters retaliated against him sometime *after August 15*, 2020, when he filed an inmate complaint about his August 12, 2020 appointment with Peters. The August 12, 2020 complaint was filed the same day as the appointment and before Peters's alleged retaliation. An inmate cannot exhaust administrative remedies by filing an anticipatory inmate complaint for conduct that has not yet occurred. *See* Wis. Admin. Code § DOC 310.07(2) ("An inmate shall file a complaint within 14 days *after* the occurrence giving rise to the complaint." (emphasis added) ); *Tisher v. Tannan*, No. 18-CV-197-JPS, 2018 WL 3995908, at *2 (E.D. Wis. Aug. 21, 2018) (declining to treat inmate's grievance filed nearly four weeks before defendant's alleged misconduct "as an appropriate attempt to exhaust administrative remedies for an issue that had not yet occurred"); *Ross v. County of Bernalillo*, 365 F.3d 1181, 1188 (10th Cir. 2004) ("A grievance obviously cannot exhaust administrative remedies for claims based on events that have not yet occurred. Nor does a grievance exhaust administrative remedies for all future complaints of the same general type."), *abrogated on other grounds by Jones*, 549 U.S. at 223 & n.3. Even if the timing were right, the August 12, 2020 complaint alleges medical staff delayed the plaintiff's medical treatment between August 6 and 10, 2020. ECF No. 41-4 at 10. That complaint does not mention or involve Peters's treatment on August 12, 2020, or her alleged retaliation after that date. Whether other medical staff retaliated against the plaintiff from August 6 to 10, 2020, is a different claim than his claim that Peters retaliated against him sometime after August 15, 2020. As noted above, the plaintiff must file a complaint and exhaust his administrative remedies for *each* claim on which he seeks to proceed. *See Henry*, 2021 WL 2838400, at *2.

The plaintiff also cites an inmate complaint he filed on August 26, 2020, alleging that a correctional officer retaliated against him for filing a lawsuit the previous day. ECF No. 52, ¶ 11 (citing ECF No. 41-7 at 11). He notes that in his appeal from the dismissal of that complaint, the plaintiff wrote, "I feel like the gbci staff are all working in collusion." *Id.*; ECF No. 41-7 at 12. He suggests that statement was enough to raise his retaliation claim against Peters. ECF No. 52, ¶ 11. But whether GBCI staff were colluding with each other is a different issue than the allegations he raised in the underlying complaint. The plaintiff was permitted to raise "only one

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works.

clearly identified issue" in his inmate complaint, Wis. Admin. Code § DOC 310.07(5), and the issue he raised related to the officer who allegedly retaliated against him for filing a lawsuit. Even if the statement in his appeal were enough to raise his claim of retaliation against Peters, raising an issue for the first time in the *appeal* of a dismissed complaint violates Wisconsin's procedural rules and does not properly raise or exhaust administrative remedies for that issue. *Hiler v. Pollard*, No. 07-C-863, 2009 WL 188027, at *3 (E.D. Wis. Jan. 27, 2009) (citing *Pozo*, 286 F.3d at 1023) ("[A]n issue raised for the first time in an appeal to the CCE is not an exhausted issue."). Neither the plaintiff's August 26, 2020 complaint, or his appeal from the dismissal of that complaint, properly raised or exhausted his claim that Peters retaliated against him for filing the August 15, 2020 inmate complaint against her.

**\*6** Peters has satisfied her burden to show that the plaintiff failed to exhaust his administrative remedies related to his retaliation claim against her. I will dismiss that claim without prejudice. *See Ford*, 362 F.3d at 401. [2]

[2]  Because there are no unresolved questions of fact, I need not hold a hearing as described in *Pavey*, 544 F.3d at 742. *See Aguirre v. Witek*, No. 08-C-1110, 2010 WL 1292161, at *2 (E.D. Wis. Mar. 30, 2010) (citing *Doss v. Gilkey*, 649 F.Supp.2d 905, 912 (S.D. Ill. 2009)).

### III. CONCLUSION

For the above reasons, **IT IS ORDERED** that the State Defendants' motion for partial summary judgment on exhaustion grounds (ECF No. 38) is **GRANTED**. The claims against defendants Utter and Brauer are **DISMISSED WITHOUT PREJUDICE**. Because there are no exhausted claims against Utter and Brauer, they are **DISMISSED**.

Defendant Susan Peters's motion for partial summary judgment on exhaustion grounds (ECF No. 42) is **GRANTED**. The plaintiff's First Amendment retaliation claim against Peters is **DISMISSED**. He may proceed against Peters on only his Eighth Amendment claim of deliberate indifference.

I will enter a separate order with new deadlines for the remaining parties to complete discovery and submit dispositive motions on the merits.

**All Citations**

Slip Copy, 2021 WL 3409290

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT 4

768 Fed.Appx. 565
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or after
Jan. 1, 2007. See also U.S.Ct. of App. 7th Cir. Rule 32.1.
United States Court of Appeals, Seventh Circuit.

Christopher S. STRECKENBACH, Plaintiff-Appellant,
v.
Michael MEISNER, et al., Defendants-Appellees.

No. 18-3052
|
Submitted April 22, 2019 [*]
|
Decided April 23, 2019
|
Rehearing and Rehearing En
Banc Denied May 23, 2019 [*]

[*]     We agreed to decide the case without oral argument
        because the briefs and record adequately present
        the facts and legal arguments, and oral argument
        would not significantly aid the court.    FED. R.
        APP. P. 34(a)(2)(C).

[*]     Circuit Judge Joel M. Flaum did not participate in
        consideration of this petition for rehearing.

**Synopsis**
**Background:** State prisoner brought § 1983 action, asserting
that prisoner's cell was searched and he was otherwise
harassed by five correctional officers in retaliation for
exercising First Amendment right to file a lawsuit against
prison officials, and that another eight officials or officers
failed to intervene. The United States District Court for the
Eastern District of Wisconsin, No. 17-C-412, Lynn Adelman,
J., 2018 WL 4374931, granted summary judgment to officials
and officers. Prisoner appealed.

**Holdings:** The Court of Appeals held that:

prisoner failed to exhaust his administrative remedies against
some officials and officers, and

an officer's alleged conduct would not have deterred a person
of ordinary firmness from future lawsuit-filing activity.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion for Summary
Judgment.

 **\*567**  Appeal from the United States District Court for the
Eastern District of Wisconsin. No. 17-C-412, Lynn Adelman,
*Judge.*

**Attorneys and Law Firms**

Christopher S. Streckenbach, Pro Se

Jody J. Schmelzer, Attorney, Wisconsin Department of
Justice, Madison, WI, for Defendants-Appellees

Before DIANE P. WOOD, Chief Judge, WILLIAM J.
BAUER, Circuit Judge, DIANE S. SYKES, Circuit Judge

**ORDER**

Christopher Streckenbach, a Wisconsin inmate formerly
housed at Redgranite Correctional Institution, sued several
prison officials for retaliation under the First Amendment
when they subjected him to a cell search and otherwise
harassed him after he filed a lawsuit against a prison
employee. The district court entered summary judgment
for the defendants, concluding that Streckenbach did not
exhaust his administrative remedies for his claims against
several defendants and that he presented insufficient evidence
of constitutional violations committed by the remaining
defendants. We affirm.

This is Streckenbach's second suit against officers at
Redgranite. In 2015 he sued the warden and a sergeant
relating to the destruction of his personal property and
lost at summary judgment; we affirmed. *Streckenbach v.
VanDensen*, 868 F.3d 594 (7th Cir. 2017). Streckenbach traces
the beginning of his difficulties with several officers to this
2015 suit.

Because Streckenbach did not respond to the defendants'
motion for summary judgment in the manner required by
the local rules, the district court adopted the defendants'
proposed findings of fact, and we do the same. E.D. WIS.
CIV. L.R. 56(b)(4); *Salvadori v. Franklin Sch. Dist.*, 293

Case 2:21-cv-01429-JPS    Filed 09/08/23    Page 18 of 21    Document 69

[F.3d 989, 992 (7th Cir. 2002).](#) As mentioned, Streckenbach believes that the 2015 lawsuit led to the retaliatory acts that are the subject of this suit. He describes a subsequent mailroom encounter when he allegedly was mocked by Officers Scott **\*568** Kosminskas and Michael Crump (Kosminskas supposedly told Streckenbach that he heard Streckenbach was suing him and he wanted to know whether he needed to hire a good defense attorney). And two years later Kosminskas and Crump—still rankled by the 2015 lawsuit, according to Streckenbach—threatened to send him to solitary confinement after he refused to be strip-searched. Streckenbach filed a grievance over the strip-search incident against both officers, but the grievance was dismissed. Streckenbach did not appeal the dismissal.

Streckenbach had run-ins with other officers as well. While the 2015 suit was pending, Officer Greg Radtke conducted a routine, monthly cell search and, according to Streckenbach, turned his room upside down. Around this same time, Sergeant Jon LaFontaine said that it was a joke for Streckenbach to think he would prevail in his lawsuit, summoned him over the loudspeaker with an announcement that "attorney Streckenbach" should go to the sergeant's desk, rubber-stamped "LEGAL MAIL OPEN IN PRESENCE OF INMATE" on his correspondence more times than necessary, and threatened to send him to solitary confinement for no reason. According to Streckenbach, Officer Eric Podoski —for no reason—also threatened to send him to solitary confinement, kicked his cell door on occasion, and once called him "RGCI's biggest jailhouse snitch" in front of other inmates.

Believing that all these attacks were retaliation for his 2015 suit, Streckenbach filed multiple grievances complaining as much, and he formally asked several times to be separated from these officers. These complaints were reviewed by Security Director David Tarr and Unit Supervisor Joli Grenier, who either denied the grievances or left them unresolved by the time Streckenbach filed this suit. Streckenbach in turn filed a grievance against Officer Grenier, complaining that she had taken too long to address his grievances. This grievance was dismissed, and he did not appeal it.

Streckenbach also says that he sought help from certain prison officials to intervene and curb the abuse, but no one stepped up. Among those officials whom he named were prison Warden Michael Meisner, Deputy Warden Sandra Hautamaki, Administrative Captain Andrew Wesner, Captain

Chad Keller, Psychologist Supervisor Nikolaus Werner, and Institution Complaint Examiner Michelle Smith.

Streckenbach then filed this suit, bringing First Amendment retaliation claims against five defendants (LaFontaine, Podoski, Crump, Kosminskas, and Radtke) and failure-to-intervene claims against eight others (Meisner, Hautamaki, Tarr, Wesner, Grenier, Keller, Werner, and Smith).

The judge entered summary judgment for all defendants. He determined that Streckenbach did not exhaust his administrative remedies regarding claims against six defendants (Meisner, Hautamaki, Wesner, Keller, Werner, and Smith—whose conduct he never challenged in an inmate complaint), as well as Crump and Kosminskas (he did not appeal the dismissal of his complaint over the strip-search incident, nor had he received a decision on one then-pending separation request against them). As for LaFontaine, Podoski, and Radtke, the judge ruled that no jury could conclude that their allegedly retaliatory acts were serious enough to deter a reasonable person from engaging in future First Amendment activity. Lastly, regarding Streckenbach's claim that Tarr failed to intervene to stop the defendants' retaliatory behavior, the judge determined that their behavior was not unconstitutional, so **\*569** there was no reason for Tarr to do anything about it. [1]

[1]  The judge's order puzzlingly omitted any analysis of Streckenbach's claim against Unit Supervisor Joli Grenier.

On appeal Streckenbach maintains generally that he fully exhausted his administrative remedies for all his claims. But the exhaustion requirement is strict, requiring a prisoner to complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodlow v. Ngo,* [548 U.S. 81, 85, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006);](#) *[Pozo v. McCaughtry,](#)* [286 F.3d 1022, 1025 (7th Cir. 2002).](#) As the district court properly determined, Streckenbach failed to exhaust his remedies against Meisner, Hautamaki, Wesner, Keller, Werner, and Smith because he did not file any inmate complaints against them challenging their failure to intervene on his behalf. [WIS. ADMIN. CODE DOC § 310.01(2)(a).](#) He also failed to exhaust his remedies against Crump, Kosminskas, and Grenier because he did not appeal the dismissals of his complaints against them. *Id.* §§ 310.05, 310.09.

As for Streckenbach's First Amendment retaliation claims (which he did exhaust) against Podoski, Radtke, and LaFontaine, he generally challenges the entry of summary judgment on grounds that the judge downplayed the seriousness of the alleged misconduct. But to survive summary judgment, he needed to provide enough evidence to allow a reasonable jury to conclude that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter future protected activity; and (3) his protected activity at least partially motivated the deprivation suffered. *Walker v. Groot*, 867 F.3d 799, 803 (7th Cir. 2017).

The judge concluded that Streckenbach's claim against Podoski faltered on the second prong—that a reasonable jury could not find that Podoski's behavior was likely to deter future protected activity. But Streckenbach could point to evidence that Podoski called him a snitch in front of other inmates, and the First Amendment prohibits conduct that would likely deter a person of "ordinary firmness" from continuing to engage in protected activity. *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). It is "common knowledge that snitches face unique risks in prison," *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008), and we think that a reasonable juror could infer that being labeled a snitch would likely deter a person of "ordinary firmness" from exercising his First Amendment rights. As for Podoski's other conduct—threatening to send him to solitary confinement for no reason and occasionally kicking his cell door—a reasonable jury could conclude that those actions, too, could deter protected conduct. The adverse actions "need not be extreme," *Massey v. Johnson*, 457 F.3d 711, 720 (7th Cir. 2006), nor need they independently violate the constitution, *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009); *Hoskins v. Lenear*, 395 F.3d 372 (7th Cir. 2005). And we have explicitly said before that kicking a cell door could, if done with a retaliatory motive, be actionable. *Bridges*, 557 F.3d at 541.

The judge, however, appropriately concluded that even if Streckenbach satisfied the second prong, summary judgment was still proper under the third prong because there was no record evidence of a retaliatory motive. Streckenbach cannot point to any evidence suggesting that Podoski was even aware of the 2015 lawsuit **\*570** at the time of any of this conduct, let alone that he was motivated by it. (Podoski in fact says that he did not learn of the lawsuit until December 12, 2016, when Chad Keller, his supervising officer, discussed Streckenbach's complaints with him.) Streckenbach speculates that Podoski must have learned about his lawsuit because the prison is a small place and word gets around, but neither speculation

nor suspicious timing—without more—is enough to survive summary judgment. *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014).

Summary judgment was properly entered for LaFontaine, as well. The judge was correct that Streckenbach could not satisfy the second prong of the prima facie case. No rational jury could conclude that much of LaFontaine's conduct—poking fun at the amount of money Streckenbach sought in damages, mocking him for thinking he could prevail in his lawsuit, summoning him to the sergeant's desk over the loudspeaker with references to "attorney Streckenbach," or excessively rubber-stamping "LEGAL MAIL" on correspondence addressed to Streckenbach—would deter a person of "ordinary firmness" from future protected activity. True, we have noted that a "campaign of petty harassments" that included reprimands and ridicule could be enough to deter free expression, *see, e.g.*, *Massey*, 457 F.3d at 720–21, but we believe on this record that the judge accurately assessed the situation.

Streckenbach also complained that LaFontaine threatened to send him to solitary confinement—a threat that, as we already have said, could deter a person of ordinary firmness from exercising future speech. But this does not justify reversal because Streckenbach cannot satisfy the third prong of the prima facie test. The record here (effectively the defendants' uncontested version of the facts) permits no inference to allow a jury to find that any such threat was motivated by the 2015 suit.

The judge also correctly concluded that Streckenbach's claim against Radtke faltered on the second prong of the prima facie test. No reasonable jury could conclude that Radtke's monthly search of his cell would deter a person of ordinary firmness from exercising future speech. Not only was the cell search Streckenbach complains of routine, but there is no evidence that the search was conducted improperly.

Lastly, Streckenbach's claim against Tarr—that he failed to intervene to prevent violations of Streckenbach's First Amendment rights—also fails. The judge was correct that to prevail, Streckenbach would need to show that Tarr had knowledge of those violations, *see Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017), and Streckenbach did not provide evidence that any occurred at all.

AFFIRMED

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**All Citations**

768 Fed.Appx. 565

---

**End of Document**                                   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.