# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BOBBIE TORRY,

                Plaintiff,

v.

LISA ALBRECHT, CANDACE
WHITMAN, MICHAEL MEISNER,
and LYLE WEINTRAUB,

                Defendants.

Case No. 21-CV-1429-JPS

**ORDER**

Plaintiff Bobbie Torry, an inmate confined at Fox Lake Correctional Institution ("FLCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that his constitutional rights were violated. ECF No. 1. On June 22, 2022, the Court screened Plaintiff's complaint and allowed Plaintiff to proceed on an Eighth Amendment conditions of confinement claim related to the water quality against Defendants Lisa Albrecht ("Albrecht"), Candace Whitman ("Whitman"), and Warden Michael Meisner ("Meisner") (collectively the "State Defendants"). ECF No. 12. On April 25, 2023, the parties filed a joint notice and request for clarification. ECF No. 37.

On May 30, 2023, the State Defendants filed a motion for summary judgment. ECF No. 41. In accordance with the Court's scheduling order, the parties filed a joint statement of undisputed facts, ECF No. 42, and the State Defendants filed separate proposed findings of disputed facts, ECF No. 44. Plaintiff did not initially file a timely response; however, it appears that a later filing, ECF No. 90, includes Plaintiff's position on this motion.

Although untimely, the Court has considered Plaintiff's opposition arguments in its decision.

On June 2, 2023, in accordance with the parties' guidance in their notice and request for clarification, the Court granted Plaintiff's motion to amend the complaint and allowed Plaintiff to proceed against Albrecht, Whitman, Meisner, and Dr. Lyle Weintraub ("Weintraub"), a newly named defendant, for an Eighth Amendment deliberate-indifference claim for their failure to treat Plaintiff's serious kidney issues. ECF No. 51 at 6. Given Weintraub's late entrance into the case, the Court issued new deadlines to accommodate the new defendant in the amended complaint. *Id.* at 15.

On July 5, 2023, Plaintiff filed a motion for the Department of Justice ("DOJ") to accept service on behalf of Weintraub. ECF No. 56. On July 25, 2023, Weintraub appeared through his own counsel, ECF Nos. 60, 61, and he filed a waiver of service returned executed, ECF No. 63. The Court will deny Plaintiff's motion to accept service as moot due to Weintraub's appearance.

On September 8, 2023, Weintraub filed a motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies. ECF No. 65. On September 22, 2023, Weintraub filed a motion to dismiss for the failure to state a claim. ECF No. 72. On September 29, 2023, the State Defendants filed a notice of renewal of motion for summary judgment and indicated that they rely on the brief and all materials already on file. ECF No. 77. On October 10, 2023, Plaintiff filed a motion for an extension of time to respond to the motion to dismiss, ECF No. 78, and a brief in opposition to Weintraub's motion for summary judgment, ECF No. 79. On October 17, 2023, Plaintiff filed a brief in opposition to Weintraub's motion to dismiss. 82. On October 23, 2023, and October 27, 2023, Weintraub filed reply briefs

for his motion for summary judgment and motion to dismiss. ECF Nos. 83, 87. On October 25, 2023, Plaintiff filed a motion for an extension of time to respond to the State Defendants' motion for summary judgment. ECF No. 86. On November 13, 2023, Plaintiff filed a brief in opposition to the State Defendants' motion for summary judgment. ECF No. 90.

The three pending motions, (1) the State Defendants' motion for summary judgment on the merits; (2) Weintraub's motion for summary judgment based on the exhaustion of administrative remedies; and (3) Weintraub's motion to dismiss, are now fully briefed and ready for disposition. The State Defendants' motion and Weintraub's motions involve two entirely different issues, and the Court will therefore separately address them below. For the reasons explained below, the Court will grant the State Defendants' motion for summary judgment, grant Weintraub's motion for summary judgment, deny Weintraub's motion to dismiss as moot, and dismiss this case in its entirety.

1.     **WEINTRAUB EXHAUSTION**

To begin, the Court briefly addresses the fact that Weintraub filed two dispositive motions—a motion for summary judgment and a motion to dismiss—on the same issue of whether he exhausted his administrative remedies prior to filing this case. "By and large, a motion to dismiss is not the right time or the right place to challenge a claim for lack of exhaustion." *Barrett v. Fed. Bureau of Prisons*, No. 19-CV-3250, 2022 WL 93504, at *3 (N.D. Ill. Jan. 10, 2022). Exhaustion is an affirmative defense under the Prison Litigation Reform Act ("PLRA"), so "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). As explained below, the Court grants Weintraub's motion for summary judgment based on his failure to exhaust administrative

remedies. As such, the Court will deny Weintraub's motion to dismiss as moot.

## 1.1 Summary Judgment Legal Standard

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

## 1.2 Exhaustion Legal Standard

The Prison Litigation Reform Act ("PLRA") establishes that, prior to filing a lawsuit complaining about prison conditions, a prisoner must exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). To do so, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). He must do so precisely in accordance with those rules; substantial compliance does not satisfy the PLRA. *Id.*; *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005). A suit must be dismissed if it was filed before exhaustion was complete, even if exhaustion is achieved before judgment is entered. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). The exhaustion requirement furthers several purposes, including restricting frivolous claims, giving prison

officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record, and reducing the scope of litigation. *Smith v. Zachary*, 255 F.3d 446, 450–51 (7th Cir. 2001). Failure to exhaust administrative remedies is an affirmative defense to be proven by a defendant. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

### 1.2.1 Inmate Complaint Review System

The Wisconsin Department of Corrections (the "DOC") maintains an inmate complaint review system ("ICRS") to provide a forum for administrative complaints. Wis. Admin. Code § DOC 310.04. The ICRS "allow[s] inmates to raise in an orderly fashion issues regarding department policies, rules, living conditions, and employee actions that personally affect the inmate or institution environment, including civil rights claims." *Id.* § DOC 310.01(2)(a). Before commencing a civil action or special proceedings, "inmate[s] shall exhaust all administrative remedies the [DOC] has promulgated by rule." *Id.* § DOC 310.05.

There are two steps an inmate must take to exhaust the available administrative remedies. First, the inmate must file an offender complaint with the Institution Complaint Examiner ("ICE") within fourteen days of the events giving rise to the complaint. *Id.* § DOC 310.07(2). The ICE may reject the complaint or return the complaint to the inmate and allow him or her to correct any issue(s) and re-file within ten days. *See id.* § DOC 310.10(5),(6). If the complaint is rejected, the inmate may appeal the rejection to the appropriate reviewing authority within ten days. *Id.* § DOC 310.10(10).[1] If the complaint is not rejected, the ICE issues a

---

[1] The ICRS defines a "reviewing authority" as "a person who is authorized to review and decide an inmate complaint." Wis. Admin. Code § DOC 310.03(15).

recommendation of either dismissal or affirmance to the reviewing authority. *Id.* § DOC 310.10(9),(12). The reviewing authority ("RA") will affirm or dismiss the complaint, in whole or in part, or return the complaint to the ICE for further investigation. *Id.* § DOC 310.11(2).

Second, if the ICE recommends, and the RA accepts, dismissal of the complaint, the inmate may appeal the decision to the Corrections Complaint Examiner ("CCE") within fourteen days. *Id.* §§ DOC 310.09(1), 310.12. The CCE issues a recommendation to the Secretary of the Department of Corrections, who may accept or reject it. *Id.* §§ DOC 310.12(2), 310.13. The inmate exhausts this administrative process when he or she receives the Secretary's decision. *Id.* § DOC 310.13(2),(3). If the inmate does not receive the Secretary's written decision within ninety days of the date of receipt of the appeal in the CCE's office, the inmate shall consider the administrative remedies to be exhausted. *Id.* § DOC 310.13(4).

### 1.3 Relevant Facts

Defendant Weintraub's motion for summary judgment addresses the issue only of whether Plaintiff exhausted his administrative remedies. The Court finds the following facts relevant to the disposition of this issue.

#### 1.3.1 Plaintiff's Allegations

On May 11, 2017, Plaintiff arrived at FLCI. ECF No. 52 at 4. Prior to that time, he was incarcerated at Columbia Correctional Institution for the previous fifteen years. *Id.* On May 6, 2021, H.S.U. staff sent Plaintiff for fasting blood test lab work. *Id.* On May 7, 2021, Weintraub sent Plaintiff laboratory results stating that he had a slight decrease in kidney function for his "Glomerular Filtration Rate" at 73 instead of 90. *Id.* at 5.

In late May 2021, Plaintiff had an appointment with Weintraub to discuss his laboratory results. *Id.* During this meeting, Plaintiff told

Weintraub that he believed there was lead in his blood from drinking the contaminated prison water. *Id.* He told Weintraub that the contaminated water caused his kidney issue. *Id.*

On May 17, 2021, Plaintiff filed an inmate complaint regarding the contaminated water and resulting damage to his kidneys. *Id.* On June 1, 2021, Albrecht, the Assistant H.S.U. Manager, told the complaint examiner that there was no indication that the water was contributing to the decrease in his kidney function. *Id.* Plaintiff refers to a 2019 Department of Natural Resources indicating lead and copper in the drinking water and that Plaintiff's housing unit had the second highest lead level in the prison. *Id.* at 6.

Meisner is the Warden of Fox Lake Correctional Institution and is responsible for the operation and welfare of all the inmates in the prison. *Id.* at 7. Whitman is the H.S.U. Manager. *Id.* at 10. On October 14, 2021, Plaintiff sent both Meisner and Whitman requests asking to receive a blood test to determine whether lead was causing him kidney problems. *Id.* at 10, 11. Whitman responded that the prison did not do blood testing for lead. *Id.* at 10. Meisner did not respond to Plaintiff's request. *Id.* at 11. By failing to respond, Plaintiff alleges that they forced him to consume contaminated water with lead in it. *Id.* at 10, 11. In July 2021, the Department of Corrections ("DOC") and Meisner approved $4 million to build a new filtration system at the prison but failed to address the lead pipe problem. *Id.* at 11.

On August 23, 2021, Plaintiff's filtration rate failed again. *Id.* at 13. Weintraub stated that he did not know what was causing Plaintiff's decrease in kidney function. *Id.* Plaintiff asked Weintraub to be sent to an outside kidney specialist to treat his condition. *Id.* Weintraub never

provided Plaintiff any additional treatment and refused to send Plaintiff to a specialist. *Id.* Plaintiff alleges both emotional and physical injuries as a result of drinking the contaminated water. *Id.* at 13.

### 1.3.2. Exhaustion Facts[2]

"'On May 17, 2021, Torry filed an inmate complaint (arguing that the drinking water at FLCI caused a decrease in his kidney function/kidney disease).'" ECF No. 67 at 2 (quoting ECF No. 52 ¶ 14). The inmate complaint was dated May 15, 2021[3] and is identified as FLCI-2021-7651. *Id.* (citing ECF No. 52-1 at 14). In the section to briefly state the issue of the complaint, Plaintiff stated: "I Torry believe that the drinking water cause or contributed to my 'decrease in Kidney Function/Kidney disease' here at Fox Lake." *Id.* (citing ECF No. 52-1 at 14). In the section asking Plaintiff to describe how he attempted to resolve this issue, Plaintiff stated: "I submitted DOC-3035 to H.S.U the response that Torry received was to inform me of a scheduled appointment (ACP) see, (DOC-3035 enclosed)." *Id.* (citing ECF No. 52-1 at 14). In the section for Plaintiff to provide the details surrounding the complaint, he stated:

> On May 6, 2021 H.S.U. Nurse sent inmate Torry an appointment to come up to H.S.U for "Fasting blood Lab work" 3 Next, on May 7, 2021 Dr. Weintraub stated: within the Laboratory results (that I Torry have a slight decrease in kidney function). during our discussion I Torry asked the

---

[2]Defendant Weintraub submitted proposed findings of fact based on previously filed stipulated facts and Plaintiff's amended complaint. ECF No. 67 Weintraub also submitted a statement of potentially disputed facts, however none of these facts are material to Plaintiff's inmate complaints. *See* ECF No. 68.

[3]The Court notes that although Plaintiff stated that the complaint was filed on May 17, 2021, and the complaint itself is dated May 15, 2021, it appears that the complaint was filed on May 15, 2021, and acknowledged on May 17, 2021. *See* ECF No. 52-1 at 14-15. Regardless, the specific date of filing is not material to the issue at hand.

doctor if drinking the water here at Fox Lake can cause kidney disease. His response was that it's possible. Therefore, the above stated reasons I submit this complaint.

*Id.* (citing ECF No. 52-1 at 14). On June 10, 2021, FLCI-2021-7651 was dismissed. *Id.* (citing ECF No. 52-1 at 16).

On June 15, 2021, Plaintiff appealed the dismissal of FLCI-2021-7651.

*Id.* (citing ECF No. 52-1 at 17). In the appeal, Plaintiff stated:

The (I.C.E) Complaint Examiner Bartow stated in part: (that Laboratory Reports on May 18, 2021 Show no-abnormalities everything is normal limits). ICE says, that there is no evidence that the water at FLCI cause decrease in Torry's kidney Function/kidney disease. I Torry disagree because, First; It is well document that the water here at "Fox Lake Institution is contaminated. Second; on May 7, 2021 my Laboratory Result clearly show that Torry have a decrease in kidney function my Filtration Rate is at low 73 and also, my AGAP Rate is at low 9 both of the above "Filtration Rate" and the "AGAP Rate" is regarding to Torry's kidneys. See (Laboratory Report on May 7, 2021 enclosed exhibit).

*Id.* (citing ECF No. 52-1 at 17). Plaintiff's appeal was dismissed on June 24, 2021. *Id.* (citing ECF No. 52-1 at 20).

On October 18, 2021, Plaintiff signed a second inmate complaint, denominated FLCI-2021-15858. *Id.* (citing ECF No. 52-1 at 21). Plaintiff stated the date of the incident was October 14, 2021. *Id.* (citing ECF No. 52-1 at 21). In the section to briefly state the issue of the complaint, Plaintiff stated: "H.S.U manager "Candace Whitman" refuse to give inmate Torry a (blood test for Lead) here at Fox Lake." *Id.* (citing ECF No. 52-1 at 21). In the section asking Plaintiff to describe how he attempted to resolve this issue, Plaintiff stated: "I submitted DOC-761 "interview/information request" too: H.S.U manager Candance Whitman (for a blood test for lead). Her response

she sent Torry a half page copy of request but, no response." *Id.*
(citing ECF No. 52-1 at 21). In the section for Plaintiff to provide the
details surrounding the complaint, he stated:

> On 10/14/2021 inmate Torry sent an interview request too:
> Candance Whitman H.S.U. manager for (a blood test for lead)
> because I really believe that this is the main reason why Torry
> have a decrease in kidney function. There is lead within my
> blood system. Therefore, the above stated reasons. I submit
> this complaint…

*Id.* (citing ECF No. 52-1 at 21). Plaintiff's inmate complaint was
dismissed on November 5, 2021. *Id.* (citing ECF No. 52-1 at 25). On
November 10, 2021, Plaintiff appealed the dismissal of FLCI-2021-
15858. *Id.* (citing ECF No. 52-1 at 26). In the appeal, Plaintiff stated:

> The I.C.E Complaint Examiner Bartow contacted Ms.
> Albrecht, Asst. H.S.m, reveals there is no evidence to support
> the inmate's request for a blood test for lead. Therefore, the
> request was denied. This Examiner relied up on the
> professional judgment of health care staff and recommends
> this complaint be dismissed. However, Torry disagree
> because of the following reasons; 1. Fact (1) Torry has
> multiple decrease in his kidney function did not have that
> problem before being transferred to Fox Lake Correction.
> 2. Fact (2) Lead causes decreases in Kidney Function. 3. Fact
> (3) none of prison guard drinks this prison water they bring
> there water From home. Fact; 4. Prior warden Hepp admitted
> in (2019) of Lead and copper in water. There are trying to fix
> the problem.

*Id.* (citing ECF No. 52-1 at 29). Plaintiff's appeal was dismissed on
December 7, 2021. *Id.* (citing ECF No. 52-1 at 29).

## 1.4    Analysis

The Court finds that Plaintiff failed to exhaust his administrative
remedies against Weintraub. The parties agree on the material facts

pertinent to the issue of exhaustion as to Weintraub. The parties agree that Plaintiff filed two inmate complaints, FLCI-2021-7651 and FLCI-2021-15858, in relation to this case. The parties further agree that Plaintiff properly exhausted these inmate complaints. The parties dispute, however, the legal question of whether either of the two complaints exhausted the claim against Weintraub for an Eighth Amendment deliberate indifference claim to Plaintiff's serious medical need. Weintraub argues that the issues raised in Plaintiff's inmate complaints did not provide notice that he was dissatisfied with Weintraub's medical treatment. As such, Weintraub argues that the claim against him should be dismissed for Plaintiff's failure to exhaust administrative remedies.

One purpose of the exhaustion requirement is to permit prison officials the opportunity to address inmate concerns internally before an inmate initiates litigation. *Woodford v. Ngo,* 548 U.S. 81, 89 (2006); *Schillinger v. Kiley,* 954 F.3d 990, 995 (7th Cir. 2020). Exhaustion "promotes efficiency because a claim can generally be resolved much more quickly in an administrative proceeding than in litigation in federal court." *Schillinger,* 954 F.3d at 995. To provide notice of the conduct complained of, an inmate's complaint must contain the information required by the prison's administrative rules. *Strong v. David,* 297 F.3d 646, 649 (7th Cir. 2002). Where those rules are silent, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Id.* at 650; *Riccardo v. Rausch,* 375 F.3d 521, 524 (7th Cir. 2004). An inmate need not state "facts, articulate legal theories, or demand particular relief," nor must he name each potential defendant, so long as the grievance "object[s] intelligibly to some asserted shortcoming." *Strong,* 297 F.3d at 650; *Riccardo,* 375 F.3d at 524. In this way, the approach to interpreting inmate complaints is akin to

the federal notice pleading system. *Dye v. Kingston*, 130 F. App'x 52, 55 (7th Cir. 2005). Wisconsin's administrative rules provide little guidance as to the required contents of an inmate complaint; however, those rules do require that offender complaints "[c]ontain only one issue per complaint, and [] clearly identify the issue." Wis. Admin. Code DOC § 310.09(1)(e).

In *Schillinger*, the Seventh Circuit found that a state prisoner failed to exhaust all available administrative remedies because the complaint that he submitted to the prison was not specific enough. 954 F.3d at 996. The prisoner sued several prison officials for not protecting him from an attack by another inmate. *Id.* The applicable state law provided that "a prisoner must 'clearly identify the issue' in an inmate complaint," but it did not specify "what it takes to satisfy this requirement." *Id.* at 995. The prisoner's complaint mentioned none of the officials by name, nor did it show that any officials "had reason to know in advance that an attack might occur and failed to take appropriate measures to prevent it." *Id.* The Seventh Circuit therefore concluded that even though the inmate gave a thorough description of the incident, he did not put the prison on notice that he intended asserting a failure-to-protect claim. *Id.*

Applying that logic here, the Court finds that Plaintiff's two inmate complaints failed to provide notice to the prison of the claim brought against Weintraub in this case. Plaintiff's inmate complaint, FLCI-2021-7651, dealt with the issue that Plaintiff believed that the drinking water caused or contributed to his decrease in kidney function at FLCI—not that Weintraub provided him inadequate medical treatment. The Court acknowledges that the inmate complaint mentions Weintraub by name when referring to his laboratory results, however, it does not raise any issue with Weintraub's care or plan of treatment. Given this, the Court finds that

FLCI-2021-7651 did not exhaust the Eighth Amendment medical claim against Weintraub in this case.

Similarly, the Court finds that Plaintiff's second inmate complaint, FLCI-2021-15858, failed to provide notice of the inadequate medical claim against Weintraub. Unlike his first inmate complaint, this complaint does not mention Weintraub in any way. Instead, Plaintiff clearly states that his issue was that Candace Whitman refused to give Plaintiff a blood test for lead. The Court is mindful of the fact that inmate complaints need not articulate legal theories or specifically name every individual defendant. *See Strong,* 297 F.3d at 650. The issue here is not that the inmate complaint failed to specifically name Weintraub, but rather that if failed to articulate the facts of what Weintraub allegedly did wrong. Given this, the Court finds that FLCI-2021-15858 did not exhaust the claim against Weintraub in this case.

As such, the Court finds that Plaintiff failed to exhaust his administrative remedies as to the claim against Weintraub and will grant his motion for summary judgment. The Court will accordingly dismiss the claim against Weintraub without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (finding all exhaustion dismissals should be without prejudice).

## 2. STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### 2.1 Legal Standard

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the

applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

## 2.2    Factual Background

In compliance with the Court's order, the State Defendants and Plaintiff submitted a stipulated set of joint facts. ECF No. 42. As such, the following facts are taken directly from these stipulated facts with only minor edits for grammar and formatting. The State Defendants also included a separate page of disputed facts as allowed by the Court's scheduling order, *see* ECF No. 44, which the Court will address in its analysis.

### 2.2.1   Parties and Background

Plaintiff has been housed at FLCI since May 11, 2017. At the time of filing the motion for summary judgment, Defendant Meisner was employed by the Wisconsin Department of Corrections ("DOC") as the Warden at FLCI. He has held this position since May 2020.  At the time of filing the motion for summary judgment, Defendant Whitman was employed by DOC as the Health Services Manager at Fox Lake. She was promoted to this position on July 26, 2016. Whitman has been licensed as a registered nurse in the State of Wisconsin since 2009. At the time of filing the motion for summary judgment, Defendant Albrecht was employed by

Corrections as the Assistant Health Services Manager at FLCI. Albrecht has been licensed as a registered nurse in the State of Wisconsin since 2001.

Neither Whitman nor Albrecht see patients routinely for examination and treatment. Whitman and Albrecht do review patients' medical records and provide information regarding their treatment to Institution Complaint Examiners. Therefore, Whitman and Albrecht are part of the informal and formal resolution of inmate ICRS complaints.

### 2.2.2   Water Quality at Fox Lake

In 2013, compliance issues with the Lead and Copper Rule triggered a water quality investigation at FLCI. FLCI had been out of compliance with lead requirement since 2012. In May 2014, the DOC entered into a consent order with the Wisconsin Department of Natural Resources ("DNR") regarding the water quality at FLCI. Specifically, FLCI agreed to provide "public education" regarding the lead and copper action level exceedances; submit plans for cleaning, flushing, monitoring, and rehabilitation of the wells in the system; and obtain compliance with the lead and copper standards.

That same month, the State hired Abigail Cantor to analyze FLCI's municipal water system, the distribution system, and the water quality within the buildings. DOC took various efforts to remediate the contaminant problem, and in December 2016, the DNR "closed out" the consent order. After that, the lead and copper test results fell below the action levels, but they were not zero. Between 2017-2022, FLCI's water tested with the following levels of lead:

| 4/26/2017 | .51 | 0 of 20 results were above the action level |
| 12/13/2017 | .26 | 0 of 20 results were above the action level |

| 6/27/2018 | 0 | 0 of 20 results were above the action level |
|-----------|-----|-----------------------------------------------------|
| 9/25/2019 | .17 | 0 of 10 results were above the action level |
| 10/22/2020 | .31 | 0 of 10 results were above the action level |
| 2021 | (.31) | (testing not required and reported last sample date) |
| 6/27/2022 | .50 | 0 of 20 results were above the action level |
| 11/4/2022 | 0 | 0 of 20 results were above the action level |

The action level for lead is 15 ug/l (micrograms per liter). The lead level at FLCI for the September 25, 2019, testing showed results of .17 ug/l (micrograms per liter) in Housing Unit #6, and the 90th percentile level was 0.17 ug/l (micrograms per liter). The lead level of 0.17 ug/l (micrograms per liter) is well below the 15 ug/l action level.

### 2.2.3   Plaintiff's Request for a Blood Test

On May 7, 2021, Defendant Dr. Weintraub sent Plaintiff a letter with his recent lab results and indicated Plaintiff had a slight decrease in kidney function. Plaintiff's glomerular filtration rate (the rate at which your blood is filtered each minute) was 73. The normal range for a man Plaintiff's age was greater than 90. Plaintiff met with Weintraub on May 12, 2021, and they discussed his lab results that showed decrease kidney function.

On May 13, 2021, Weintraub entered a progress note for Plaintiff for lower urinary tract symptoms and specifically possible decreased urine stream along with decreased kidney function. Following his lab result, Plaintiff underwent an ultrasound of his kidneys on May 18, 2021. On May 19, 2021, Weintraub sent Plaintiff correspondence in which he told Plaintiff his kidney, bladder, and ureters sonogram (ultrasound) returned with no abnormalities. Weintraub explained Plaintiff's results were normal and

advised if he wanted to discuss the results further, he should call or schedule an appointment.

On October 28, 2021, Whitman sent Plaintiff correspondence in response to a DOC-761 interview/information request form that Plaintiff submitted to the Warden's office requesting a blood test. The Warden's office referred the interview/information request to the health services unit. Warden Meisner is not a licensed health care professional. Warden Meisner does not provide any medical care or treatment.

As the health services manager, Whitman attended regularly scheduled multi-disciplinary meetings with the Warden's office as a representative from the health services unit. During these meetings, they were advised the institution water was being monitored and tested by the Department of Natural Resources and it was safe for human consumption. Whitman relayed this information to the health services unit staff. Whitman explained that blood tests are not ordered based on patient request, but rather based on medical indication based on the provider's clinical findings. Whitman denied Plaintiff's request for a blood test. Weintraub did not send Plaintiff to an outside urologist for evaluation. Whitman further advised Plaintiff to consult with his medical provider during his next appointment if he had specific medical concerns.

As registered nurses, who are not advanced care providers, neither Whitman nor Albrecht have the authority to prescribe medications or order labs or testing. Whitman reviewed Plaintiff's medical record and found no order from a prescriber ordering a blood test for any heavy metals.

### 2.2.4 Expert Opinions

The parties in consolidated matter *Stapleton v. Hepp et al.*, 16-CV-406-jdp, obtained court-appointed water quality expert David Hand to assess

the engineering of the FLCI drinking water system, and court-appointed medical expert Dr. Alfred Franzblau to review for possible adverse health side effects among inmates related to consumption of water potentially contaminated with arsenic, copper, lead and/or manganese. Dr. Hand agreed with the remediation efforts carried out at FLCI. Dr. Hand opined that the remediation efforts were implemented within a reasonable time considering the system was not able to be shut down for remediation.

Dr. Hand noted in his report that the remediation was well planned and implemented to address the potential health problems at the facility. Dr. Hand cannot guarantee any current or future health problems caused by the water at FLCI.

Dr. Franzblau reviewed records for 14 inmates, 3 of whom had been diagnosed with chronic kidney disease, specifically decreased rate of glomerular filtration, and he opined that it is unlikely that any of the 14 inmates experienced any chronic symptoms or other chronic toxic effects (including cancer) from ingestion of lead in the drinking water at FLCI. Dr. Franzblau did not review Plaintiff's records. Dr. Franzblau did not conduct a biopsy or blood test of Plaintiff.

### 2.2.5   Current Testing Requirements at FLCI

On March 1, 2023, the DNR notified FLCI that following a review of FLCI's recent lead and copper monitoring results, the DNR determined FLCI was eligible to move to triennial monitoring (once every three years). FLCI was next required to collect samples during the next municipal community triennial monitoring period, June 1 – September 30, 2023. Any existing requirements Fox Lake may have had to collect samples in 2023 were waived.

### 2.3. Analysis

The State Defendants brought a motion for summary judgment seeking dismissal of the Eighth Amendment claim for deliberate inference to Plaintiff's serious medical need. ECF Nos. 41, 77. Based on the Court's review of the State Defendants' submissions, and for the reasons explained below, the Court will grant the State Defendants' motion for summary judgment and will dismiss the claim against them with prejudice.

#### 2.3.1 Eighth Amendment Standard

To prove that Defendants violated his rights under the Eighth Amendment, Plaintiff must present evidence establishing that he suffered from "'an objectively serious medical condition'" and that Defendants were "'deliberately, that is subjectively, indifferent'" to that condition. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)). A prison official shows deliberate indifference when he or she "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"'A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.'" *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)). A broad range of medical conditions may be sufficient to meet the objective prong of a deliberate indifference claim, including a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns sustained from lying in vomit. *Id.* at 861 (citing *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (collecting cases)). On

the other hand, a prison medical staff "that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not by its refusal violate the Constitution." *Gutierrez v. Peters,* 111 F.3d 1364, 1372 (1997) (quoting *Cooper v. Casey,* 97 F.3d 914, 916 (7th Cir. 1996)).

Under the Eighth Amendment, an incarcerated person does not have the right to direct his own course of treatment. *See Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015). Likewise, an incarcerated person's disagreement "about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)). But neither may prison officials "doggedly persist[ ] in a course of treatment known to be ineffective." *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005). To defeat Defendants' motions for summary judgment, Plaintiff must present evidence showing the treatment he received was "'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' his condition." *Id.* at 654 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A

Case 2:21-cv-01429-JPS   Filed 01/29/24   Page 20 of 29   Document 92

> doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (citing *Zaya v. Sood*, 836 F.3d 800, 805-806 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[ ] that [he] did[.]" *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016)) (alterations in original). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment where the treatment is known to be ineffective but is chosen anyway. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

Finally, "[a] delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" *Id.* (quoting *McGowan*, 612 F.3d at 640). To prevail on an Eighth Amendment claim alleging a delay in providing treatment, the plaintiff "must also provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain." *Petties*, 836 F.3d at 730–31. Such evidence may include a showing in the plaintiff's medical records that "the patient repeatedly complained of enduring pain with no modifications in care." *Id.* at 731; *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007).

### 2.3.2 Deliberate Indifference — Albrecht and Whitman

First, Defendants Albrecht and Whitman do not argue that Plaintiff did not have an objectively serious medical need. *See* ECF No. 45 at 7. As such, for the purposes of this Order the Court will assume, without definitively ruling, that Plaintiff suffered from an objectively serious medical condition and satisfies the first prong of the deliberate indifference standard.

Second, assuming Plaintiff suffered a serious medical condition, the Court finds that no reasonable juror could find that Albrecht and Whitman were deliberately indifferent to Plaintiff's need for treatment. The undisputed facts show that Albrecht and Whitman are registered nurses. Neither Whitman nor Albrecht see patients routinely for examination and treatment. Whitman and Albrecht do review patients' medical records and provide information regarding their treatment to Institution Complaint Examiners. As registered nurses, who are not advanced care providers, neither Whitman nor Albrecht have the authority to prescribe medications or order labs or testing. Plaintiff attempts to dispute this fact by stating that they can make referrals, or recommendations to the provider. *See* ECF No. 44 at 1. However, Plaintiff's assertion does not properly address this fact and, as such, the Court deems this fact undisputed for the purposes of this motion. *See* Fed. R. Civ. P. 56(e)(2).

Plaintiff's allegations against Albrecht are sparse. On May 17, 2021, Plaintiff filed an inmate complaint regarding the contaminated water and resulting damage to his kidneys. ECF No. 52 at 5. On June 1, 2021, Albrecht, told the complaint examiner that there was no indication that the water was contributing to the decrease in his kidney function. *Id.* The Eighth Amendment does not require individuals to go beyond their expertise;

"nurses may generally defer to instructions given by physicians, 'but that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012) (quoting *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010). Albrecht did not have any authority to order labs or testing for Plaintiff. Moreover, Plaintiff was also under the care of Dr. Weintraub in May 2021, and there is nothing in the record suggesting that Albrecht could not defer to Weintraub's treatment of Plaintiff as a doctor. Based on the record before it, the Court finds that no reasonable juror could find that Albrecht acted with deliberate indifference to Plaintiff's medical needs.

Similarly, the Court does not find Whitman was deliberately indifferent to Plaintiff's medical needs. Whitman explained to Plaintiff that blood tests were not ordered based on patient request, but rather based on a provider's clinical findings. After denying Plaintiff's request for a blood test, Whitman advised Plaintiff to consult with his medical provider during his next appointment if he had medical concerns. The Court acknowledges that the fact that the complaint examiner consulted with Whitman does suggest that Whitman could have done something to intervene in Plaintiff's medical treatment if she thought it was appropriate to do so. However, there is nothing in the record that could lead a reasonable jury to conclude that Whitman was aware of a risk of harm to Plaintiff yet disregarded it. Whitman had been advised at Warden meetings that FLCI water was being monitored, tested by the DNR, and was safe for human consumption. Plaintiff's doctor had not prescribed a blood test for him, and Whitman could generally defer to that decision. As such, the Court finds that no reasonable juror could find that Whitman acted with deliberate indifference

to Plaintiff's medical needs. Given this finding, the Court will grant Albrecht's and Whitman's motion for summary judgment and will dismiss the claim against them with prejudice.

### 2.3.3 Deliberate Indifference—Defendant Meisner

First, Defendant Meisner does not argue that Plaintiff did not have an objectively serious medical need. ECF No. 45 at 9. As such, for the purposes of this Order the Court will assume, without definitively ruling, that Plaintiff suffered from an objectively serious medical condition and satisfies the first prong of the deliberate indifference standard.

Second, assuming Plaintiff suffered a serious medical condition, the Court again finds that no reasonable juror could find that Meisner was deliberately indifferent to Plaintiff's need for treatment based on the undisputed facts. The undisputed facts show that Meisner was the FLCI Warden at all times relevant to Plaintiff's complaint. ECF No. 42 at 1. On October 28, 2021, Whitman sent Plaintiff correspondence in response to a DOC-761 interview/information request form that Plaintiff submitted to the Warden's office requesting a blood test. *Id.* at 5. The Warden's office referred the interview/information request to the health services unit. *Id.* Meisner is not a licensed health care professional and does not provide any medical care or treatment. *Id.* Meisner defers to medical staff opinions concerning all medical questions. ECF No. 44 at 1. Although Plaintiff attempts to dispute this fact by stating that the Meisner can still make a referral or recommendation to HSU manager, he does not support this assertion and, as such, the Court deems this fact undisputed for the purposes of this motion. *See* Fed. R. Civ. P. 56(e)(2).

As the Seventh Circuit explained in *Burks v. Raemisch,* a prisoner must allege more than this to state a deliberate indifference claim against a

high-level prison or government official. 555 F.3d at 593. There, the plaintiff contended that high level Wisconsin Department of Corrections and prison officials were deliberately indifferent to his eye condition because he had written them letters and grievances informing them of his condition, but they did not address the problem. *Id.* In affirming the district court's dismissal of those claims, the Seventh Circuit explained:

> Burks's view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.

*Id.* at 595.

Plaintiff alleges that Meisner knew about his request for a lead test and did not personally get involved. However, high-level state and prison officials without medical training cannot be held liable for their "failure to tell [the prison's] medical staff how to do its job." *Id.* at 596; *see Taylor v. Carter*, No. 3:21-CV-852-RLM-MGG, 2022 WL 1686548, at *3 (N.D. Ind. May 26, 2022) (holding prisoner failed to state deliberate indifference claim where he had written letters to the director of the state corrections department and the warden of his facility); *Richard v. Pritzker*, Case No. 19-cv-1308-DWD, 2022 WL 476241, at *2–3 (S.D. Ill. Feb. 16, 2022) (dismissing deliberate indifference claims against Governor Pritzker and Jeffreys where complaint alleged only that they had not acted when plaintiff sent letters to them). Meisner has no medical training and his office referred Plaintiff's

interview/information request to the health services unit to handle based on their expertise. Based on the undisputed facts, the Court finds that no reasonable jury could find that Meisner was deliberately indifferent to Plaintiff's serious medical needs. As such, the Court will accordingly grant Meisner's motion for summary judgment and will dismiss the claim against him with prejudice.

### 2.3.4   Causation

Finally, the Court briefly addresses the State Defendants' causation argument. Even assuming deliberate indifference, the Court finds that Plaintiff's claim would still fail because he fails to show that any underlying health problems were caused by the water at FLCI. Plaintiff is not a medical professional, so he is "not competent to diagnose himself, and he has no right to choose his own treatment." *Lloyd v. Moats*, 721 F. App'x 490, 495 (7th Cir. 2017). Plaintiff assumes, without any medical evidence, that his medical issues were caused by the water at FLCI. However, Plaintiff's mere speculation that the water caused his injuries is not enough to create a disputed issue of material fact on that issue. *See, e.g.*, *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (While nonmovant "is entitled . . . to all reasonable inferences in her favor, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." (citation omitted)); *see also Turner v. Hepp*, No. 19-CV-431-JDP, 2023 WL 2571771, at *3 (W.D. Wis. Mar. 20, 2023) ("[Plaintiff]'s claims fail in part because he fails to show that his underlying health

problems were caused by the water at FLCI."). As such, Plaintiff cannot show that he was harmed by Defendants' actions or inactions.[4]

**3.    CONCLUSION**

For the reasons explained above, the Court grants Defendant Weintraub's motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies and dismisses the claim against him without prejudice. The Court will also grant the State Defendants' motion for summary judgment on the merits and dismisses the Eighth Amendment claim against the State Defendants with prejudice. No claims remain, and, as such, the Court will dismiss this action.

Accordingly,

**IT IS ORDERED** that Defendants Albrecht, Whitman, and Meisner's motion for summary judgment, ECF No. 41, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Weintraub's motion for summary judgment based on the failure to exhaust administrative remedies, ECF No. 65, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Weintraub's motion to dismiss for the failure to state a claim, ECF No. 72, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for an order for DOJ to accept service for Defendant Weintraub, ECF No. 56, be and the same is hereby **DENIED as moot**;

---

[4]The State Defendants also contend that they are entitled to qualified immunity on Plaintiff's Eighth Amendment claim. Because the Court is dismissing Plaintiff's claim on the merits, however, it need not consider the State Defendants' qualified immunity arguments.

**IT IS FURTHER ORDERED** that Plaintiff's motions for extensions of time, ECF Nos. 78, 86, be and the same are retroactively **GRANTED**; the Court has considered Plaintiff's opposition arguments;

**IT IS FURTHER ORDERED** that the Eighth Amendment claim against Defendant Weintraub be and the same is hereby **DISMISSED without prejudice** for Plaintiff's failure to exhaust administrative remedies;

**IT IS FURTHER ORDERED** that the Eighth Amendment claim against Defendants Albrecht, Whitman, and Meisner be and the same is hereby **DISMISSED with prejudice**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED.**

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 29th day of January, 2024.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.